[S. F. No. 1315.   In Bank. — April 5, 1901.]

SOUTHERN PACIFIC COMPANY, Respondent, v. W. H. ROBINSON et al., Appellants.

RAILROAD COMPANIES — STOP-OVER PRIVILEGE OF PASSENGER — STARE DECISIS — BAD FAITH — DESIRE TO RECOVER PENALTIES. — The decision in *Robinson* v. *Southern Pacific Company*, 105 Cal. 520, as to the right of a railway passenger to exercise a stop-over privilege under section 490 of the Civil Code, is not *stare decisis*, as applied to a case of bad faith, where the passage was not desired by one who genuinely wished to exercise the stop-over privilege, but was repeatedly sought for the sole purpose of having the stop-over privilege refused, in order to lay the foundation for many causes of action to recover the penalties prescribed by that section.

ID. — INJUNCTION — MULTIPLICITY OF SUITS — CONFEDERATION OF DEFENDANTS TO EXTORT PENALTIES. — Equity has jurisdiction of an action for an injunction to restrain the prosecution of a multiplicity of suits against a railway company, based on penalties aggregating a large sum, by reason of very many alleged violations of section 490 of the Civil Code, where it is alleged, and found upon sufficient evidence, that there was a confederacy of the defendants with the sole end in view to extort money from the railroad company by laying the foundation for causes of action to recover penalties under that section, through securing the refusal of a stop-over privilege which was not in fact desired to be exercised.

ID. — JURISDICTION OF EQUITY — NOVEL CONDITIONS. — There are no fixed rules limiting the power of equity in dealing with subject-matters coming generally within its jurisdiction; and equity has power to deal with novel conditions.

ID. — STOP-OVER PRIVILEGE — CONSTRUCTION OF CODE — REMEDIAL STATUTE — OBJECT OF ENACTMENT. — Section 490 of the Civil Code, in securing to a railway passenger a stop-over privilege upon his ticket at an intermediate station, is remedial, and was enacted solely for the benefit of the traveling public, and is intended to apply only to one who desires the passage contemplated, and to exercise the stop-over privilege conferred, and to resume the passage without paying further fare.

ID. — INAPPLICABILITY OF CODE PROVISIONS — PERSONS ACTING IN BAD FAITH. — Section 490 of the Civil Code does not include persons who are mere pretenders, and who act in bad faith toward the railroad corporation and toward the law, — who do not genuinely desire a passage upon the tickets purchased, or to exercise a stop-over privilege thereon, or to resume a free passage thereon for the remainder of the journey, — but who in fact desire the refusal of the stop-over privilege, and to pay further fare after stopping over, in order to

fasten penalties upon the corporation, and who are not at all damaged by the refusal of the stop-over privilege.

ID. — DUTY OF RAILROAD COMPANY TO FURNISH TICKET. — The railroad company owes no duty to furnish a ticket to any one, unless that person desires to put it to the use for which it was made and issued.

ID. — DESIRE OF PASSAGE — QUESTION OF FACT — RIGHT OF RECOVERY. — The question whether the person demanding a ticket desires the passage thereon indicated, is one of fact, to be determined before a right of recovery can be established; and if that question is determined in the negative, no recovery can be had.

ID. — DESIRE OF STOP-OVER PRIVILEGE — INCONSISTENT DESIRE OF REFUSAL. — The legislature only intended to give the stop-over privilege to those desiring to exercise it; and such desire is absolutely inconsistent with a desire to have it refused, in order to lay the foundation for a cause of action by securing such refusal.

ID. — DESIRE AND DEMAND OF PRIVILEGE — DEMAND IN BAD FAITH. — In order to secure a stop-over privilege, there must be both a desire and a demand therefor. Neither is sufficient without the other; and both are equally necessary to support a recovery for not allowing the privilege. A demand made in bad faith, and with a desire for a refusal, is wholly ineffective.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco and from an order denying a new trial.   A. A. Sanderson, Judge.

The facts are stated in the opinion of the court.

Thomas V. Cator, and C. M. Jennings, for Appellants.

The bill of peace was maintainable only for the purpose of consolidating the numerous actions, and embodying the liability in a single judgment and decree. (*New York etc. R. R. Co.* v. *Schuyler*, 34 N. Y. 29, 44, 45.)   The defendants had the legal right to claim the stop-over privilege; and their motive in exercising a legal right is immaterial, and not a proper subject of inquiry. (*Phelps* v. *Nowlen*, 72 N. Y. 39;[1] *McCune* v. *Norwich Gas Co.*, 30 Conn. 521;[2] *Boyson* v. *Thorn*, 98 Cal. 578.) Penalties may be legally exacted against a railroad company for statutory delinquencies. (Civ. Code, sec. 490; *Robinson* v. *Southern Pac. Co.*, 105 Cal. 526; *State* v. *Kansas City etc. R. R. Co.*, 32 Fed. Rep. 722.)   If passage on a ticket is refused, or if, after riding part of the way, further passage on it is refused, the law conclusively presumes actual damage. (Civ. Code, ˅

---

[1] 28 Am. Dec. 93, and note.        [2] 79 Am. Dec. 278.

sec. 3360; *Webb* v. *Portland Mfg. Co.,* 3 Sum. 189; *Hancock* v. *Hubbell,* 71 Cal. 537, 539; *Shanklin* v. *Gray,* 111 Cal. 88, 95; Cooley on Torts, 2d ed., 68 (*64), and cases cited; 1 Sutherland on Damages, pp. 2–13, secs. 2, 9–10.) The statute itself has fixed the damage, thus determining that it is a proper case for liquidated damage. Section 3300 of the Civil Code provides the measure of damage, "except where otherwise expressly provided by the code." Section 490 of the Civil Code is one of the cases "where it is otherwise expressly provided by the code." Section 490 of the Civil Code is remedial, and not penal, the remedy being by civil action, to the party aggrieved. Where the law provides for the recovery of a fixed sum as compensation, or in lieu of compensation, for private injury to the person aggrieved, the statute is remedial, and not penal. (*Hubbell* v. *Gale,* 3 Vt. 266, 268, 271; *Moore* v. *Jones,* 23 Vt. 743–748; *Ordway* v. *Centennial Nat. Bank,* 47 Md. 217, 241;[3] *Neal* v. *Briggs,* 12 Ga. 104, 112–118; *Read* v. *Stewart,* 129 Mass. 407, 409; *La Forest* v. *Tolman,* 117 Mass. 109, 110;[4] *Reed* v. *Northfield,* 13 Pick. 94, 100–102;[5] *Woolverton* v. *Taylor,* 132 Ill. 206; *Cochran* v. *Wiechers,* 119 N. Y. 399; *Huntington* v. *Attrill,* 146 U. S. 673–675; *Higgins* v. *Central etc. R. R. Co.,* 155 Mass. 176.[6]) The damage being liquidated and fixed by statute, no proof of damage or amount was required. (*Gibbs* v. *Ranard,* 86 Cal. 532–537; *Santa Rosa Lighting Co.* v. *Woodward,* 119 Cal. 30, 31.) Equity will not relieve against liquidated damages. (*Skinner* v. *White,* 17 Johns. 368; *Westerman* v. *Means,* 12 Pa. St. 97, 100.)

Pierson & Mitchell, Foshay Walker, William F. Herrin, and John Garber, for Respondent.

Equity had jurisdiction, both on the ground of avoiding a multiplicity of suits, and because of the fraudulent scheme and confederation alleged, proved, and found, as to which the remedy at law was inadequate. (*Nashville etc. Ry. Co.* v. *McConnell,* 82 Fed. Rep. 65; *Sang Lung* v. *Jackson,* 85 Fed. Rep. 502; *Andrews* v. *Pratt,* 44 Cal. 309–319; *Smithers* v. *Fitch,* 82 Cal. 158; *Spreckels* v. *Hawaiian Com. etc. Co.,* 117 Cal. 377; *Kellogg* v. *King,* 114 Cal. 378;[7] *Cowley* v. *Northern Pac. Ry. Co.,* 159 U. S. 569.) The set, fraudulent purpose of the defend-

[3] 28 Am. Rep. 455, and note.     [6] 31 Am. St. Rep. 544.
[4] 19 Am. Rep. 400.     [7] 55 Am. St. Rep. 74.
[5] 23 Am. Dec. 662, and note.

ants to recover the penalties, being the only purpose entertained, placed them out of the pale of the statutory provisions. (*Meyers* v. *Brooklyn Heights P. Co.*, 41 N. Y. Supp. 798.)   A person cannot open a book-account of penalties.   (*Parks* v. *Nashville etc. Ry. Co.*, 13 Lea, 1;[8] *Fisher* v. *New York Central Ry. Co.*, 46 N. Y. 644; *State* v. *Kansas City etc. R. R. Co.*, 32 Fed. Rep. 722.)   A person engaged in an iniquitous effort to extort money unjustly cannot receive the aid of a court of justice. (*Norfolk etc. R. R. Co.* v. *Irvine*, 85 Va. 217; *Norfolk etc. R. R. Co.* v. *Wysor*, 82 Va. 263; *Lillis* v. *St. Louis etc. Ry. Co.*, 64 Mo. 64, 473;[9] *Cincinnati etc. Ry. Co.* v. *Cole*, 29 Ohio St. 126.[10])

GAROUTTE, J.—This action was brought to restrain the appellants from prosecuting about five hundred suits, which it was alleged in the complaint they had already commenced, and also from bringing any other actions based on claims for penalties of two hundred dollars each, which they claimed were due them by reason of alleged violations by the respondent of the provisions of section 490 of the Civil Code.   It is alleged that they comprised a confederacy of individuals, who had been seeking to extort money from the railroad company by laying apparent foundations for claims to penalties, bringing suits thereon, and prosecuting those suits severally to final judgment.   Issue was joined, and upon the trial the court found as a fact that 674 of these actions were pending in various justices' courts, and also found that about 2,300 other alleged causes of action of the same general character were held by them.   It thus appears that appellants held about three thousand alleged causes of action against plaintiff, which they were either prosecuting or threatening to prosecute, and upon which they were claiming six hundred thousand dollars in penalties, or, as they term it, "liquidated damages."

This important litigation rests upon section 490 of the Civil Code, which grants a stop-over privilege to passengers holding a particular kind of railroad ticket.   The section is as follows:—

"Every railroad corporation must provide, and, on being tendered the fare therefor fixed as provided in the preceding section, furnish to every person desiring a passage on their passenger-cars a ticket which entitles the purchaser to a ride,

---

[8] 49 Am. Rep. 655.        [10] 23 Am. Rep. 729.

[9] 27 Am. Rep. 255.

and to the accommodations provided on their cars, from the
depot or station where the same is purchased to any other
depot or station on the line of their road.   Every such ticket
entitles the holder thereof to ride on their passenger-cars to
the station or depot of destination, or any intermediate station,
and from any intermediate station to the depot of destination
designated in the ticket, at any time within six months there-
after.   Any corporation failing so to provide and furnish
tickets, or refusing the passage which the same calls for when
sold, must pay to the person so refused the sum of two hundred
dollars."

The aforesaid section was construed by this court as grant-
ing stop-over privileges to passengers, in the case of *Robinson*
v. *Southern Pacific Co.*, 105 Cal. 526.   It was there strenuously
contended that the section had no such effect, but this court
determined that the railroad company was mistaken in its
contention as to the law; and, pending the final decision of
that case, these appellants most industriously engaged in the
business of manufacturing the three thousand alleged causes
of action here involved.   No case is found in the law books
where an undertaking of this character ever assumed such
proportions, and where the spirit of speculation was carried
on daily for weeks, months, and even years, with all the
method and system of a great business undertaking; and it
may be well to suggest, right here, that the law and the facts
should be very plain before any court would assist appellants
in carrying out this questionable venture to a successful end.

Some objection is made to the form of the present action.
Yet, while the proceeding is somewhat novel, it may be said
that the facts upon which it is inaugurated are also novel;
and we see no reason why equity will not take hold of this
state of facts.   In *Weinstock, Lubin & Co.* v. *Marks*, 109 Cal.
529,[11] the power of equity to deal with novel conditions was
directly presented and discussed, and it was held that there
were no fixed rules limiting the power of equity in dealing
with subject-matters coming generally within its jurisdiction,
and that the chancellor should not be cramped in the exercise
of his powers by fixed and rigid rules of law.   We leave this
branch of the case with the declaration that this action is
maintainable in a court of equity by reason of the claim of a

[11] 50 Am. St. Rep. 57.

confederacy and combination formed and existing between these appellants to create and prosecute the aforesaid three thousand causes of action against the plaintiff, and upon the further ground, that, in order to avoid a multiplicity of actions, equity will consolidate these three thousand alleged causes of action into one action, and thus having taken hold of the matter, will dispose of it in its entirety.

The evidence in this case is sufficient to support the material findings of fact made by the trial court, and we will not deal with it in detail. It shows that these appellants combined and concerted together to create these alleged causes of action with the sole end in view of securing the penalties or damages provided for in the aforesaid section of the code, and that fact is a vital point in the case. The findings further establish that these appellants did not desire the stop-over privilege, but, upon the contrary, in making their demands for such privilege, desired that those demands should be refused. It is further found that appellants stopped over in Oakland in transit to Alameda for the single purpose and object of securing a refusal, upon a subsequent train, of the stop-over privilege, and thus lay the foundation for a cause of action. There is some general evidence that upon twenty of these occasions when stop-over privileges were denied, certain of these appellants had business in the city of Oakland. But the evidence to this effect is not clear and explicit, and in view of the fact that 2,980 of the stop-overs were made when the parties had no business, did not desire to stop over, and demanded the privilege simply to lay the foundation for a suit based upon a denial thereof, we feel that the court was entirely justified in placing these twenty refusals in a common receptacle with the remaining 2,980.

Whatever rights these appellants have are purely statutory. Their entire right, whatever it may be, is found alone in the provisions of section 490 of the Civil Code. The tickets sold to appellants in all these cases are similar to the one which was involved in the Robinson case heretofore cited. While the face of the ticket says nothing whatever as to stop-over privileges, yet the court has held that section 490 enters into the contract made by the parties, and must be read as a part thereof; and from the language of that section it was held, by construction, that stop-over privileges were given to the holders of the tickets there described. That is the length and width

of the Robinson decision, and it is in no way *stare decisis* upon the question now before the court. That question is this: Are these appellants within the scope, spirit, and intent of the law? And we are greatly aided in arriving at the true construction of the section by a consideration of the objects and purposes of its enactment. That particular portion of it bearing upon this matter is essentially of a remedial character, and it was enacted solely for the benefit of the traveling public. It was enacted solely to enable passengers traveling upon railroad trains to stop over at intermediate stations for the purposes of business or pleasure, and then at any time within six months thereafter to resume their journey to the original point of destination, without the payment of an additional fare.

The first part of the section declares that the railroad corporation, upon being tendered the proper fare, must furnish a ticket to every person *desiring* a passage upon their passenger trains, which ticket entitles a passenger, etc. Now, let us assume that the section provided for the mulcting of the corporation in damages or penalties to the amount of two hundred dollars for any refusal upon its part to furnish such a ticket upon demand. Without question, a mere tender of the fare and demand upon the corporation for the ticket would not *conclusively* fasten the liability for a penalty upon it. This is true, for the reason that the section says the person demanding the ticket must be one "desiring a passage" on the corporation's passenger-cars. Whether or not he be such a person is a pure question of fact, to be decided like any other question of fact, before a right of recovery would be established; and if that question of fact be decided in the negative, no recovery could be had. A person *desiring* a ticket for any other purpose than for use upon the corporation's passenger-cars would not be a person coming within the purview of the section, and therefore the corporation would not be liable in refusing him the ticket. If the law had been such as the illustration here shows, and these appellants had tendered the proper fare, demanded tickets, and had been refused, and had made the tender, expecting and desiring to be refused tickets, and for the single purpose of creating a cause of action against the corporation, their efforts would have gone for naught in any court of justice; for they would not have been acting in good faith, either toward the corporation or toward the law. They would have been mere pretenders, and not persons *desiring* a passage

on the passenger-cars of the railroad corporation. They would have placed themselves neither within the letter nor the spirit of the statute. Indeed, the proposition may be more broadly stated to this effect: The corporation, either with or without this section of the code, owes no duty to furnish a ticket to any person, unless that person desires to put it to the use for which it was made and issued. It appears, therefore, by the provisions of the code itself, that, as to parties entitled to tickets, this section was only dealing with and treating of persons who desired to become passengers upon its trains, and these defendants do not come within that class.

When these appellants delivered up their tickets at the ferry gates, they demanded what they termed "Oakland stopover checks." Let us assume the statute fixed a penalty to be suffered by the corporation if it refused on demand to give Oakland stop-over checks. If such were the law, we are satisfied appellants would not be entitled to recover the penalty fixed by the statute; for when they made their demands for the checks, they did not desire them, but desired a refusal of them. If they made a demand purely and solely for the purpose of securing a refusal thereof, and thus laying the foundation for the future prosecution of an action to recover the penalty, then certainly they did not desire to exercise the stop-over privilege, and therefore did not desire a stop-over check. These people, in effect, said, "I do not want to stop over in Oakland, but I demand that you give me a stop-over check." Or they said, "If you will give me a stop-over check for Oakland, I do not want it; but if you will not give me the check, I do want it." The law does not require the corporation to give checks to people of that kind. The whole spirit and intent of the law declare that persons of that class do not come within its provisions.

In the enactment of the section of the code, the legislature intended to give the stop-over privilege only to holders of tickets desiring to exercise it. It would be a *reductio ad absurdum* to say that it was intended for any other purpose. That is the entire force and effect of the act; and it stands the same as if it had said in plain and direct words, " A passenger holding a ticket, and desiring a stop-over privilege, is entitled to it by virtue of this ticket." But a desire to exercise the stop-over privilege, and a desire to lay the foundation for a cause of action by securing a refusal of the stop-over privilege, can-

not exist in the mind at the same time. They are wholly irreconcilable, and cannot stand together.

It is claimed that these appellants were the holders of first-class, unlimited tickets furnished by the corporation, and by the contract thus entered into between them and the corporation — considering section 490 as a part thereof — they were entitled to stop-over privileges as a naked legal right. This contention is mainly sound, and if these parties had desired to exercise that stop-over privilege, the right was theirs, and the corporation would have violated the law, and have subjected itself to the penalties therein named, if that right had been denied to them. But the trial court has found — and the finding is clinched by the evidence — that these parties did not desire to exercise this right. Informing the conductor upon the train that they desired to exercise it, or testifying in court at the trial that they desired to exercise it, is not conclusive evidence of the fact. It may be *prima facie* evidence of the fact, but the daily conduct of these parties for months, and even years, indicates otherwise, and absolutely overwhelms all evidence to the contrary.

A person holding one of these tickets, and traveling from San Francisco direct to Alameda via Oakland, would have no right of action under this section, for the reason, — 1. That he did not desire a stop-over privilege at Oakland; or 2. If he did desire it, he did not demand it. Both of these things are equally necessary to support a recovery. If a passenger simply within his own mind desires to exercise the stop-over privilege at Oakland, but says nothing to the corporation about it, he has no right of action; yet he is in a position just as favorable to the law as one who does not desire to stop over, but in the loudest of tones demands of the corporation the privilege of stopping over. A mere demand of that kind, without the desire to stop over, constitutes but words and noise, — nothing more. A person going direct to Alameda from San Francisco, with the unexpressed desire to stop over at Oakland, has no right of action, because he has not been deprived by the corporation of the stop-over right. Neither have these appellants been deprived of the stop-over right, although they demanded it; and this is true, because they did not desire or want the right, and would not have exercised it if it had been given to them. This section of the code — be it construed strictly or liberally, narrowly or broadly — does not

contemplate a case where the stop-over privilege is denied to a passenger who does not want it, and who would refuse it if offered to him.

Let us look at this question from a slightly different angle. The tickets furnished by the corporation gave these persons a stop-over privilege,—that is, the privilege of stopping over at Oakland, an intermediate station, and thereafter, within six months, the right to resume the journey to the original point of destination without payment of an additional charge. This was a privilege and right given by the contract of carriage. It was purely optional with the holder of the ticket whether or not he would invoke it. If he did not desire to make use of the right, he had that option. The beneficial and important element to the passenger in this stop-over privilege was the right to resume his journey without payment of an additional fare. This is plain; for he could stop at the intermediate station, regardless of the contract evidenced by his ticket. Now, when these appellants resumed their journey from Oakland to Alameda, and demanded of the conductor free passage to Alameda, they did not act in good faith; for they demanded something they did not want, and demanded it, not to get it, but to secure a refusal of it; and did this solely in order that a foundation for a cause of action might be laid against the corporation. For this reason the demand was not made in good faith, and their entire conduct was opposed to the spirit and purpose of the law; for the purpose and spirit of the law was to give passengers traveling upon the corporation's passenger trains the stop-over privilege, if in fact they desired to exercise it. These appellants did not come within that class, for they never desired to exercise the privilege. While it may be said that they desired to stop over in Oakland, still it cannot be said that they desired to continue their journey without paying an additional fare. Upon the contrary, it may well be said they desired to pay the additional fare from Oakland to Alameda.

Considering these railroad tickets to constitute contracts giving stop-over privileges to all the holders thereof who desire to exercise them, then we have direct judicial authority for the conclusion at which we have arrived. In the case of *Meyers* v. *Brooklyn Heights R. R. Co.*, 41 N. Y. Supp. 798, the court said: " The command of the statute is, that the corpora-

tion shall carry for a single fare, between any two points on its road, 'any passenger desiring to make one continuous trip between such points,' and the plaintiff's whole case must rest upon the proof of his allegation that upon each of the occasions when he was refused a transfer ticket he desired to make a continuous trip from the point where he first boarded the car to a point on the line to which he demanded to be transferred.   Unless he has established that fact, he is not within the protection of the statute, and no penalty has been incurred by defendant by refusing his demand.   That he did not desire to make a continuous trip between two points on the connecting lines, is too plain for argument.   His whole purpose was, not to be transferred at the point where he made his demand.   He knew that the demand would be refused, and he had, when he boarded the car, no intention to proceed beyond the point where the two lines connected, and no desire to go beyond that point.   His whole purpose was fulfilled when he reached the place where he could conveniently have his demand for a transfer ticket refused. . . . To call such a person a 'passenger' desiring to take a continuous trip between two points on the connecting lines, would be to defeat the true purpose and intent of the statute."   In that case, notwithstanding the passenger demanded a transfer, thereby asserting that he desired to continue his journey upon the corporation's road, the court found from the evidence that he did not *desire* to continue his journey, and therefore his demand for a transfer went for naught, and a refusal to issue it to him did not form the basis of an action.   In other words, this passenger was not a person coming within the class with which the statute there involved was dealing.   In this case, if section 490 of the Civil Code, as to stop-over privileges, deals only with holders of tickets who desire to exercise that privilege, then these appellants do not come within that class; for, according to the findings of fact, backed up by the whole history of the case, they never desired to exercise the stop-over right.

It is asserted that "if appellants had a legal right to stop over, then the reasons why they stopped over were immaterial in this case"; or in other words, it is claimed the motives of appellants in stopping over at Oakland are an immaterial matter.   As before suggested, stopping over at Oakland, or desiring to stop over at Oakland, is not the exercise or· the

desire to exercise the stop-over privilege. The stop-over privilege is the right to stop over and thereafter continue the journey without the payment of an additional fare. Both of these elements are essential to the right. And if these appellants did not desire to exercise both elements of the right, they did not desire to exercise the right. This is not a mere question of the motives which actuated appellants in traveling upon the corporation's trains, but it is the question, Were the appellants deprived of a right granted by the ticket, which right they desired to exercise? If they were not so deprived, they were not damaged, and do not come within the provisions of the statute; *for, the statute being remedial, and, as contended by counsel for appellants, designed to furnish compensation for damage suffered by the passenger, it could only have been intended to apply to cases where the passenger has suffered some damage, aad therefore the appellants would not come within its terms.*

Do the rules of statutory construction, as illustrated by the decisions of courts, justify the meaning that we have given to this statute,—namely, "all holders of these tickets are entitled to exercise the stop-over privilege given by said tickets, if they so desire"? It is hardly necessary to go outside of the lids of appellants' brief in this case for authority to justify the aforesaid construction of the section. This same section uses the words, "every railroad corporation," and by its terms only attempts to deal with tickets issued by *railroad corporations.* Yet appellants find it necessary to construe this language, and, invoking statutory rules of construction for that purpose, declare the words "railroad corporation" are broad enough to include "persons, partnerships, and associations." We are not concerned as to the soundness of appellants' position in this regard. But to support it they say, "Anything which is within the *purpose and intention* of the makers of the statute is as much within the statute as if it were its letter." Again, they say, "It is a cardinal rule of interpretation that a statute must be construed with reference to the objects intended to be accomplished by it." And again, "That construction will be given an act which will carry into effect the true intent of the legislature." And again, "An act induced by public considerations, the purpose of which is to protect the traveling public, should receive a liberal construction, to effectuate the benign purposes of its framers, and every statute should be expounded, not according to the letter, but according to the

meaning." These rules of construction are elementary, and appellants cite numberless authorities in support thereof. We now indorse them, and, tried and tested by them, the construction we have given section 490 cannot be successfully assailed.

In the very recent case of *Ex parte Lorenzen*, 128 Cal. 438,[12] this court said: "But for the more substantial objection that the ordinance, by its terms, would oppress and lead to the conviction of persons guilty of no fraudulent act, it is to be remembered that the letter of a penal statute is not of controlling force, and that the courts, in construing such statutes, from very ancient times have sought for the essence and spirit of the law, and decided in accordance with them, even against express language; and in so doing they have not found it necessary to overthrow the law, but have made it applicable to the class of persons or the kind of acts clearly contemplated within its scope." And the court held, that notwithstanding the language of the ordinance was broad enough to include *all passengers*, as matter of construction it included only passengers who put the transfer to an unlawful use.

For the foregoing reasons the judgment and order are affirmed.

McFarland, J., Van Dyke, J., Henshaw, J., and Harrison, J., concurred.

Rehearing denied.

[12] 79 Am. St. Rep. 47.