[Civ. No. 2924.   Second Appellate District, Division Two.—August 5, 1919.]

## THE ATCHISON, TOPEKA & SANTA FE RAILWAY COMPANY (a Corporation), Appellant, v. T. E. SMITH et al., Respondents.

[1] PLEADING—MULTITUDE OF ACTIONS IN JUSTICE'S COURT—CONSOLIDATION AND TRIAL IN SUPERIOR COURT — EQUITY.—An action in equity in the superior court will lie to enjoin the plaintiff in 648 separate actions brought in a justice's court, all against the same defendant, all arising out of the same general state of facts, and all dependent upon the determination of the same disputed issues of law, from further prosecuting such actions in the justice's court, and to require that such actions be consolidated and tried in such equity proceeding as one action.

[2] ID.—NUMEROUS CLAIMANTS — ACTIONS BROUGHT TO OPPRESS — EQUITY.—Even where the right of action exists in numerous claimants, if the object of bringing a multitude of actions is to harass and oppress, equity will interfere.

APPEAL from a judgment of the Superior Court of Kern County. J. W. Mahon, Judge. Reversed.

The facts are stated in the opinion of the court.

Robert Brennan, U. T. Clotfelter, M. W. Reed and E. W. Camp for Appellant.

E. J. Emmons for Respondents.

SLOANE, J.—The plaintiff filed a complaint in equity to enjoin the prosecution of a large number of suits instituted against it by the defendant, and to compel their litigation in a single action. Demurrer to the complaint was sustained, and the plaintiff refusing to amend, judgment was given for the defendant. This appeal is by the plaintiff from the judgment refusing the equitable relief prayed for and dismissing the action. The questions on appeal, therefore, go to the sufficiency of the complaint to entitle the plaintiff to relief.

1. Bills of peace to prevent multiplicity of suits, note, 131 Am. St. Rep. 30.

The facts set out in the complaint and as admitted under demurrer so far as this appeal is concerned, are in substance as follows:

The plaintiff is a railway corporation, operating its lines of railroad from Chicago, Illinois, to the Pacific Coast in the state of California, with lines extending to various towns between Los Angeles and San Francisco. At various dates between October 1, 1911, and May 1, 1912, said railway Company transported and delivered shipments of freight to numerous consignees, located in the cities of Reedley, Dinuba, Visalia, Tulare, Corcoran, Wasco, and Bakersfield, charging and collecting therefor rates fixed by its regular tariff schedules, but which rates were in excess of the amount that it would be authorized to collect under the long and short haul clause of section 21 of article XII of the state constitution. The defendant, T. E. Smith, under alleged assignments of their claims for such excess charges from 648 of such consignees of freight, brought 648 separate suits thereon in the justice's court of the defendant, George Flournoy, a justice of the peace of Kern County, against the Railway Company, the plaintiff here. These suits were for the respective amounts of each claim, as money had and received by the railroad corporation. The total amount of these claims is the aggregate sum of $6,015. It is alleged that each of the 467 of these 648 claims amounts to less than the fees which the justice of the peace was entitled to demand and collect as costs before the action thereon could be tried. One hundred and seven others are for less than $15; and, the remaining seventy-four are for amounts running from $15 to $229.92, by far the larger part being for sums between $25 and $30. It also appears that the minimum amount of court costs alone for the trial of these cases in the justice's court would exceed the total amount of the claims, and if contested and witnesses subpoenaed, would amount to several thousand dollars in excess of that sum; and that if appeals were taken, the total amount would run up to fifteen or twenty thousand dollars.

It is further alleged that the defendants, Smith, as plaintiff, Flournoy, the justice of the peace, and Emmons, Smith's attorney, have confederated and conspired together to maintain and prosecute these numerous separate actions, instead of consolidating them, in order to force the defendant, by

the multiplicity of the suits and the excessive cost of litigating them separately, to a settlement without a contest, on their merits; that Smith is financially irresponsible, and that this plaintiff, defendant in each of the justice's court actions, in the event of successfully defending the suits, would be unable to collect any judgment for recovery of its costs against Smith; and that Smith himself is involved in no financial outlay or risk in the matter, by reason of an agreement between him and the justice of the peace that the latter will look to a recovery against the defendant Railway Company to collect his fees. It is further alleged that the Railway Company has a good and meritorious defense to all of these claims that the rates charged were valid and reasonable; that they were in each instance voluntarily paid by the respective consignees without compulsion and after delivery of the various consignments had been made; and that section 21 of article XII of the constitution of the state of California is void, because in conflict with the commerce clause of the federal constitution.

The complaint here asks, as permanent relief, that the defendants Smith, and Flournoy as justice of the peace, be perpetually enjoined from maintaining or prosecuting said 648 actions, or any of them, that the defendant Smith be required to set up and litigate in the present action all his claims involved in the 648 separate suits in the justice's court, and that the rights of the plaintiff and defendant in said justice's court actions be required to be set up and determined in this action, so as to avoid a multiplicity of actions and a flagrant abuse of the legal processes of the state of California, and for general relief.

Assuming the facts as pleaded to be true, as we must, for the purposes of this appeal, there are two aspects of this case that ought to entitle plaintiff to relief. First, if a conspiracy and combination have been entered into between the respondents, Smith as plaintiff in the numerous suits, and the justice of the peace before whom they are pending, to force a settlement and payment of these claims by reason of the prohibitive cost of defending them, it is such an abuse of the processes of the courts as should estop the plaintiff from prosecuting them, and the justice from trying them. It may be suggested that a change of venue could be obtained. This would remove the element of a disqualified court, but it would

involve the prepayment of costs (Code Civ. Proc., sec. 836) greater in amount than the total sum of the claims, and still subject the defendant there to the same multiplicity of suits and indefinite future costs in another tribunal.

If the fraud charged here were in the origin of the cause of action itself, it could clearly be reached by injunction, under the authority of *Southern Pacific Co.* v. *Robinson*, 132 Cal. 408, [12 L. R. A. (N. S.) 497, 64 Pac. 572]. But the claim sued on in each of the 648 cases constitutes a *bona fide* cause of action for which the holder is entitled to maintain suit. In *Southern Pacific Co.* v. *Robinson*, above cited, the defendants assiduously worked up some three thousand or more cases against the railway company, by procuring people to buy tickets between two stations on the line of the road and then demanding stop-over checks at an intermediate point, knowing, and, in fact, desiring, that the request would be denied. These claims were based upon section 490 of the Civil Code, the validity of which was disputed by the railway company. The defendants in the Robinson case brought separate suits in various justice's courts upon 674 of these claims, some five hundred being involved in the proceeding to enjoin. An injunction against the prosecution of these cases was sustained by the supreme court on the ground that the claims were fraudulent, that the claimants were not in good faith seeking stop-over privileges, but seeking to have this privilege denied so as to sue the railway company for the penalty and damages, and that because of the multitude of actions there was no adequate remedy at law. Mr. Justice Garoutte says in the opinion: "We leave this branch of the case with the declaration that this action is maintainable in a court of equity by reason of the claim of a confederacy and combination formed and existing between these appellants to create and prosecute the aforesaid three thousand causes of action against the plaintiff, and upon the further ground that in order to avoid a multiplicity of actions, equity will consolidate these three thousand alleged causes of action into one action, and thus having taken hold of the matter will dispose of it in its entirety." It may, however, be reasonably contended in this case that the principle involved is not different from that in the case just cited, as in each case the multiplicity of suits is resorted to as a means of extorting from the defendant a settlement which could not be had in a

consolidated action without a full investigation on the merits. Whatever potential rights Smith, the defendant here, may have to recover on the 648 claims in which he has brought suit, the fact remains, under the allegations of the complaint here under consideration, that he is making use of the processes of the courts in the manner he has adopted, not to procure a judicial determination of his rights, but to prevent such a determination, and to force a settlement by piling up against the Railway Company of excessive and prohibitive costs.

[1] But, in the second place, there is presented the question as to whether or not the nature of the numerous actions pending is not such—waiving the question of a fraudulent purpose and combination in bringing them—as to call for relief in equity by way of their consolidation. We have here 648 actions, brought by one plaintiff against one defendant, all arising out of the same general state of facts, and all dependent upon the determination of the same disputed issues of law. It is true that there are independent issues of fact which will call for separate proof on each claim, but to no greater extent than if the plaintiff were suing the defendant on an equal number of items in a store account. It may be conceded that equity will not ordinarily prevent numerous individual claimants, each having a separate cause of action against the same person, from maintaining separate actions at law, merely to prevent a multitude of suits or to relieve from excessive costs, even where the right of recovery in each depends upon the same state of facts and the same principles of law. The result of a consolidation of such actions would be to subordinate the rights of the individual claimant to the convenience of the collective body. But here we have but one plaintiff and one defendant. By his allegation of the ownership of each of these claims the plaintiff has set up a common and collective interest in them. Presumptively only the plaintiff Smith is concerned in the prosecution of these claims. His interest in one is no different from his interest in all. He stands in the same relation to them, so far as his causes of action and the methods of prosecuting them are concerned, as though he were the original consignee of all the freight shipments involved. The allegations of the complaint, as well as the inference arising from the very fact of his having brought 648 sepa-

rate actions, indicate some ulterior purpose; for no man, in his senses, having that number of claims which he could properly unite in one action, if what he was after was a fair and speedy trial on the merits, would resort to a multitude of separate actions, particularly if he had to subject himself to the ordinary expense incident alone to filing suit and serving process. Obviously, if the plaintiff is not seeking to abuse the processes of the law, his own interests, as well as those of the defendant, demand a consolidation of these actions. It would require two years of constant work of the justice's court, if each of these cases should be separately tried, before they would be disposed of; whereas they could be tried in a consolidated action in a few days at most. If equity cannot meet a situation like this, its powers should be enlarged.

[2] Even where the right of action exists in numerous claimants, if the object of bringing a multitude of actions is to harass and oppress, equity will interfere. The supreme court of Alabama, in the case of *Southern Steel Co.* v. *Hopkins,* 174 Ala. 465, [Ann. Cas. 1914B, 692, 40 L. R. A. (N. S.) 464, 57 South. 692]—one of the decisions cited and relied on by respondent—while sustaining the right of numerous persons damaged by a single tort to maintain separate actions, says: "But the mere fact that the defendant has committed a tort by which he injured one or a hundred parties cannot give him an equity to prevent each and every one of the parties so injured from maintaining an action against him to recover damages. If there had been a combination or conspiracy between such numerous parties to vex and harass the complainant by numerous suits, then he would have an equity to enjoin their prosecution." In most of the cases we have examined where equity has refused to enjoin the prosecution of numerous suits for actions arising out of the same cause, it has been upon the ground that there was not a community of interest in the parties against whom the equitable relief is sought. It has not been suggested in this case why the interests involved in each of these 648 actions have not been consolidated in the one plaintiff by virtue of the assignments.

We do not have to contemplate, in this proceeding, the confusion pointed out in the Alabama case above cited, involving "110 separate answers, and as many pleas and de-

murrers in one suit, and the innumerable issues of law and
of fact that would be raised thereby, and the defense being
conducted by 110 different attorneys, or the parties deprived
of the right to have the counsel of their choice.'' But even
so, equity might still take over the litigation. In *Smyth* v.
*Ames*, 169 U. S. 466, 517, [42 L. Ed. 819, 18 Sup. Ct. Rep.
418, see, also, Rose's U. S. Notes], the supreme court of the
United States upholds the power of a court of equity to
enjoin the bringing and maintaining of numerous actions
to enforce the terms and penalties of an act regulating rates
of transportation, which act, the petitioners claimed, was un-
constitutional. After citing numerous cases upholding the
doctrine contended for, the court says: ''In these cases the
plaintiffs, stockholders in the corporations named, ask a de-
cree enjoining the enforcement of certain rates for trans-
portation upon the ground that the statute prescribing them
is repugnant to the constitution of the United States. Under
the principles which in the federal system distinguish cases
in law from those in equity, the circuit court of the United
States, sitting in equity, can make a comprehensive decree
covering the whole ground in controversy and thus avoid a
multiplicity of suits that would inevitably arise under the
statute. The carrier is made liable, not only to individual
persons for every act, matter, or thing prohibited by the
statute, and for every omission to do any act, matter, or
thing required to be done, but to a fine. . . . The transactions
of a single week would  expose any company questioning
the validity of a statute to a vast number of suits by ship-
pers, to say nothing of the heavy penalties named in the
statute. Only a court of equity is competent to meet such an
emergency, and determine once for all, and without a mul-
tiplicity of suits, matters that affect, not simply individuals,
but the interests of the entire community.'' The actions re-
ferred to were brought to enjoin the bringing of numerous
suits. Can it be doubted if, as here, such suits had been
actually begun, that equity would have extended its relief, by
a requirement that all such be consolidated and tried in the
equity proceeding? It will be observed that in the decision
above cited the same issue was presented by the petitioners
as in the cases before us—the determination by a court of
equity of the validity of a rate schedule, in order to avoid

42 Cal. App.—36

a multitude of actions at law arising on the disputed validity of the rate.

The right of plaintiff, under circumstances such as are pleaded here, to resort to equity to prevent the prosecution of a multitude of actions, finds further support in the following authorities: Pomeroy's Equity, 4th ed., secs. 243–276; *Jordan* v. *Western Union Tel. Co.,* 69 Kan. 140, [76 Pac. 396]; *Third Ave. R. R. Co.* v. *Mayor of New York et al.,* 54 N. Y. 159; *Chicago Tel. Co.* v. *Illinois etc. Assn.,* 106 Ill. App. 54; *Chicago* v. *Collins,* 175 Ill. 445, [67 Am. St. Rep. 224, 49 L. R. A. 408, 51 N. E. 907]; *Milwaukee Electric Ry. Co.* v. *Bradley,* 108 Wis. 467, [84 N. W. 870]; *Liverpool & London etc. Ins. Co.* v. *Clunie,* 88 Fed. 160.

Especially where law and equity jurisdiction is vested in the same tribunal, as in the state of California, in a matter where equitable issues are presented, the court can take over the entire controversy and try all questions of law and fact. As to the plaintiff in the actions at law being deprived of the right of trial by jury, it is within the province of a court of equity to grant a trial by jury of any disputed issue of fact where the interests of justice demand it. If the justice's court where all these actions are pending could direct their consolidation into one action and try them together—as could be done if they were pending in a superior court—there might be no need of a resort to equity. But as no such power rests in the justice's court, equity seems to afford the only adequate relief from the abuse complained of.

We are of the opinion that the complaint was sufficient to entitle plaintiff to a trial of the issues presented, and that the demurrer should have been overruled. On a proper joining of issues by answer, and proof of the pendency of numerous actions in the justice's court, under the conditions alleged in the complaint, plaintiff will be entitled to an order enjoining further prosecution of said justice's court actions, and requiring the plaintiff therein to set up his claims for relief in this action, and to a complete determination of all the rights of the parties under the issues joined.

The judgment is reversed, with directions to the trial court to proceed as above indicated.

Finlayson, P. J., and Thomas, J., concurred.