[No. A085722. First Dist., Div. Four. Dec. 29, 2000.]

FRANKLIN & FRANKLIN et al., Plaintiffs and Appellants, v. 7-ELEVEN OWNERS FOR FAIR FRANCHISING et al., Defendants and Respondents.

**Counsel**

Law Offices of Anthony A. Ferrigno, Anthony A. Ferrigno; Franklin & Franklin and J. David Franklin for Plaintiffs and Appellants.

Rowe & Allen, Charles E. Rowe; Stark, Wells, Rahl, Schwartz & Schieffer, John F. Wells; Daniel Sheehan & Associates, Daniel J. Sheehan, Jr.; Thomas & Culp and Marc S. Culp for Defendants and Respondents.

**Opinion**

**SEPULVEDA, J.**—Appellants, several lawyers and law firms, appeal from an injunction entered by the Alameda Superior Court restraining them from

prosecuting two civil actions for damages and declaratory relief filed in the San Diego Superior Court. The San Diego proceedings arose out of class action litigation that had been pending before the Alameda Superior Court for over four years and, at the time the injunction issued, was (and is) pending in this court on appeal from a judgment approving the settlement of the class action and an award of $4.75 million in attorneys' fees to appellants and other class counsel.

The class action litigation was brought against the Southland Corporation, the franchiser of the 7-Eleven stores, by a subsequently certified national class consisting of present and former 7-Eleven franchisees. In brief, the class of plaintiff-franchisees in the Alameda litigation alleged Southland had breached its franchise agreements with them by failing to share ratably in certain rebates, discounts, and allowances provided the company by vendors of products and services sold at retail by the franchisees. Following extensive discovery and class certification by the trial court, the suit against Southland was settled for $37 million. The settlement agreement included an award of fees to class counsel, subject to court approval, allocated as follows: $2.35 million to current class counsel and $2.30 million to appellants. In the course of the litigation, the class representatives discharged appellants as class counsel. The remaining attorneys representing the class carried on, bringing the settlement negotiations with Southland to a successful conclusion. Appellants moved to have the class representatives and remaining class counsel discharged, alleging fraud, self-dealing, and conflicts of interest, and to have themselves named as class counsel. In light of these events, the trial court designated appellants as litigation class counsel, cocounsel as class counsel for settlement negotiations, and held several days of evidentiary hearings to explore the misconduct allegations as well as the fairness of the proposed settlement agreement. After the hearings and extended briefing, it approved the settlement agreement, entered a final judgment upholding it, and awarded attorneys' fees. A handful of class members who objected to the settlement agreement, along with former class counsel who had been discharged, perfected appeals from the judgment entered by the trial court on the settlement agreement. Those appeals, having been briefed and argued, we also decide today. (*7-Eleven Owners for Fair Franchising v. Southland Corp.* (2000) 85 Cal.App.4th 1135 [102 Cal.Rptr.2d 777].)

After the appeal from the judgment entered on the class action settlement agreement had been perfected, succeeding class counsel sought injunctive relief from the Alameda Superior Court restraining former class counsel—appellants here—from continuing to prosecute the two civil damage suits in

the San Diego Superior Court against them and the class representatives.[1] In brief, in those suits appellants pleaded claims for breach of contract against their former clients and breach of fiduciary duties by their former cocounsel. The complaint sought recovery from the clients in quantum meruit and from cocounsel in tort for wrongful interference with contractual relations, alleging in substance that the conduct of their former clients and cocounsel prevented appellants from recovering fair and reasonable fees for their legal work in the class action litigation. Following briefing and argument, the trial court granted the equitable relief sought, preliminarily enjoining appellants from further pursuing the San Diego litigation. Appellants appeal from the order granting injunctive relief. We affirm.

## DISCUSSION

Appellants argue the injunction entered against them by the Alameda Superior Court must be vacated for three reasons. First, the superior court lacked subject matter jurisdiction to grant any postjudgment relief because, when it did so, the judgment approving the settlement agreement was pending on appeal before this court. That being the case, they reason, in light of Code of Civil Procedure section 916, the superior court had lost subject matter jurisdiction, including jurisdiction to enter postjudgment injunctive relief. Second, to the extent the San Diego lawsuits might have led to the relitigation of matters already settled in the Alameda class action, principles of res judicata would *not* apply to conclude appellants because the class action litigation, being the subject of a pending appeal, is not final for preclusive purposes. Finally, appellants argue that rules developed under the doctrine of "exclusive concurrent jurisdiction" have no application to the facts of this case. We consider these claims in order.

### I.

A. *Was the trial court's postjudgment jurisdiction to enter injunctive relief ousted by the pendency of the class action appeal?*

Appellants rely on the language of Code of Civil Procedure section 916, subdivision (a), arguing it deprived the trial court of jurisdiction to grant the injunction against the San Diego proceedings. As pertinent here, that statute provides "an appeal stays proceedings in the trial court upon the judgment . . . appealed from or upon the matters embraced therein or affected

---

[1]Appellants filed one of these suits against class counsel and the class representatives; the second suit was filed by one of the class representatives *against* appellants, in which appellants cross-complained for damages. The record throws little light on the procedural details of these lawsuits.

thereby, including enforcement of the judgment or order, but the trial court may proceed upon any other matter embraced in the action and not affected by the judgment or order." (Code Civ. Proc., § 916, subd. (a).) Because the trial court's judgment approving the settlement agreement was on appeal at the time the injunction against the San Diego suits was entered, appellants argue, section 916 deprived the trial court of jurisdiction to enter any postjudgment relief; the injunction was therefore a void judicial act and without effect.

We disagree. ■ As this court has explained the rationale behind Code of Civil Procedure section 916, the "purpose of the rule depriving the trial court of jurisdiction during the pending appeal is to *protect the appellate court's jurisdiction by preserving the status quo until the appeal is decided.* The rule prevents the trial court from rendering the appeal futile by altering the appealed judgment or order by conducting other proceedings that may affect it. [Citation.] Accordingly, whether a matter is 'embraced' in or 'affected' by a judgment within the meaning of section 916 depends upon whether postjudgment trial court proceedings on the particular matter would have any impact on the 'effectiveness' of the appeal. If so, the proceedings are stayed; if not, the proceedings are permitted." (*Elsea v. Saberi* (1992) 4 Cal.App.4th 625, 629 [5 Cal.Rptr.2d 742], italics added; see also *In re Marriage of Horowitz* (1984) 159 Cal.App.3d 377, 381 [205 Cal.Rptr. 880]; *People v. Schulz* (1992) 5 Cal.App.4th 563, 571 [7 Cal.Rptr.2d 269]; *Betz v. Pankow* (1993) 16 Cal.App.4th 931 [20 Cal.Rptr.2d 841].)

■ Here, it is plain the injunction issued by the trial court barring a continuation of the San Diego litigation was not granted in derogation of our jurisdiction to decide the pending appeals from the judgment entered on the class action settlement agreement. On the contrary, a review of the record and the circumstances under which the injunction issued make it clear the trial court granted the relief sought for reasons that are entirely consistent with the policy underlying the jurisdictional limitations imposed on trial courts by Code of Civil Procedure section 916. Specifically, the trial court was concerned that, if allowed to continue, the San Diego litigation would have compromised the attorneys' fee award made as part of the class action settlement and the judgment entered on it. A revision of the award in the settlement agreement and judgment, if made as a result of the San Diego litigation, would threaten to render the pending appeal from the Alameda County judgment futile. It was thus to *preserve* the status quo pending the appeal—the identical objective secured by section 916, subdivision (a)—that equitable relief was granted by the trial court against appellants.

Moreover, even on a facial analysis of the text of Code of Civil Procedure section 916, subdivision (a), it is clear the relief granted does not fall within

the statutory proscription. While an argument might be made that the injunction falls within the "matters embraced [by the appeal] or affected thereby"—on the theory that the appeal involves the class settlement attorney fee award—to adopt such a view would contradict the evident policy furthered by subdivision (a). The standard by which jurisdictional divestiture under section 916 pending an appeal is evaluated was succinctly framed by this court in *Betz v. Pankow, supra,* 16 Cal.App.4th 931, in terms of the "impact" the exercise of postjudgment jurisdiction by the trial court would have on the "effectiveness" of the pending appeal. (*Id.* at p. 938; see also *Elsea v. Saberi, supra,* 4 Cal.App.4th at p. 629.) Evaluated in those terms, it is clear the postjudgment injunction against appellants in this case will have no impact on the "effectiveness" of the pending appeal; indeed, the opposite is true. Again, the basis for that conclusion lies in the fact that the injunction was entered not to modify or destroy the pending judgment appealed from, but to preserve the integrity of one part of it—the award of attorneys' fees— from potential impairment in the San Diego litigation, the precise objective appellants sought to achieve by obtaining a judgment increasing the attorneys' fees payable to them.

B. *Do principles of res judicata apply to preclude relitigation in the San Diego suit of matters settled in the class action suit?*

Appellants *are* correct, however, in their assertion that the class action settlement agreement and ensuing judgment entered on it are not res judicata as to the San Diego litigation. ▉ Unlike the federal rule and that of several states, in California the rule is that the finality required to invoke the preclusive bar of res judicata is not achieved until an appeal from the trial court judgment has been exhausted or the time to appeal has expired. (*Producers Dairy Delivery Co. v. Sentry Ins. Co.* (1986) 41 Cal.3d 903, 910-911 [226 Cal.Rptr. 558, 718 P.2d 920].) For res judicata purposes, the judgment sought to be invoked in bar must be " 'the "last word" of the rendering court—a "final" judgment.' " (*Sandoval v. Superior Court* (1983) 140 Cal.App.3d 932, 936 [190 Cal.Rptr. 29], italics omitted; see also Rest.2d Judgments, § 13, com. a, p. 132 [for finality purposes "the judgment must ordinarily be a firm and stable one . . . ."].)

▉ It follows, of course, that because the judgment on the settlement agreement was pending appeal at the time the injunction against the San Diego litigation was entered, principles of res judicata do not apply to preclude appellants' suits. As we explain below, however, that circumstance is not determinative of the ultimate question whether the trial court erred in granting injunctive relief against appellants.

*C. Does the doctrine of exclusive concurrent jurisdiction support entry of injunctive relief against appellants?*

Although the parties have briefed this issue summarily, as will appear, we deem it central to the resolution of this appeal. ▉ The established rule of "exclusive concurrent jurisdiction" provides that where two (or more) courts possess concurrent subject matter jurisdiction over a cause, the court that first asserts jurisdiction assumes it to the exclusion of all others, thus rendering "concurrent" jurisdiction "exclusive" with the first court. (See, e.g., *Scott v. Industrial Acc. Com.* (1956) 46 Cal.2d 76, 81 [293 P.2d 18]; *Halpin v. Superior Court* (1971) 14 Cal.App.3d 530, 545 [92 Cal.Rptr. 329]; *M. H. Golden etc. Co. v. Superior Court* (1950) 98 Cal.App.2d 811, 815-816 [221 P.2d 218]; *Myers v. Superior Court* (1946) 75 Cal.App.2d 925, 929 [172 P.2d 84]; *Gorman v. Superior Court* (1937) 23 Cal.App.2d 173, 176 [72 P.2d 774].) The rationale supporting the rule is a highly practical one. As Witkin has it, "Justification for the rule [of exclusive concurrent jurisdiction] rests on practical considerations. If the identical cause of action is asserted by the same plaintiff in two suits, there is no doubt that the first court has priority, but this can rarely happen. What does happen is that parties to the same controversy or transaction . . . file separate suits on their individual causes of action, usually against each other. *Although their claimed rights and therefore their alleged causes of action are distinct, the issues are substantially the same, and individual suits might result in conflicting judgments.* The rule of priority is designed to avoid the unfortunate result[s] of these conflicts by requiring, in effect, a *consolidation* of the separate actions in the court in which jurisdiction of the parties first attached. [Citations.]" (2 Witkin, Cal. Procedure (4th ed. 1996) Jurisdiction, § 420, p. 1031, first italics added, second italics in original.)

In keeping with both the practical nature of the rule, and the historically flexible remedial powers of equity, exactitude was not required. That the parties in the two actions "are not entirely identical" and "that the remedies sought by the two actions are not precisely the same" is not controlling. (*Myers v. Superior Court, supra,* 75 Cal.App.2d at p. 931.) It is sufficient for the exercise of a protective equitable jurisdiction that the attorneys' fees issue in both suits is the same and arises out of the same transaction or events. Or, as Witkin puts it, "Although their claimed rights and therefore their alleged causes of action are distinct, the issues [in the two proceedings] are substantially the same, and individual suits might result in conflicting judgments." (2 Witkin, Cal. Procedure, *supra,* Jurisdiction, § 420, p. 1031.) **(1d)** The Alameda Superior Court possessed subject matter jurisdiction over all claims arising out of the class action litigation—including the issue

of attorneys' fees—as we possess jurisdiction to review its determinations. The case thus falls, under the doctrine of exclusive concurrent jurisdiction, squarely within the remedial powers of the first court to assert jurisdiction and protect its exercise with equitable powers by enjoining collateral litigation.

## II.

Having considered the grounds relied on by appellants for vacating the injunction and concluded the trial court did not lack *jurisdiction* to grant equitable relief, we turn to a consideration of the merits. Did the trial court err in enjoining appellants from continuing to prosecute the San Diego litigation? The answer to that question, we conclude, is "no," and for reasons closely related to concerns of multiplicity of actions and the doctrine of exclusive concurrent jurisdiction discussed above. As the quotation from 2 Witkin California Procedure, *supra*, Jurisdiction, section 420, page 1031 makes plain, the rule of exclusive concurrent jurisdiction is meant to avoid the spectacle of the same parties litigating the same issues in two different courts at the same time, including the real possibility of "unseemly conflict between courts that might arise if they were free to make contradictory decisions or awards at the same time or relating to the same controversy; another reason is to protect litigants from the expense and harassment of multiple litigation." (*Scott v. Industrial Acc. Com., supra*, 46 Cal.2d at p. 81-82.) As a remedial adjunct to that rule, the first court to assert subject matter jurisdiction possesses the power and authority to grant equitable relief restraining proceedings in another court that threaten to impair the judgment. (*Glade v. Glade* (1995) 38 Cal.App.4th 1441, 1455 [45 Cal.Rptr.2d 695]; *Bartholomew v. Bartholomew* (1942) 56 Cal.App.2d 216, 225 [132 P.2d 297]; *M. H. Golden etc. Co. v. Superior Court, supra*, 98 Cal.App.2d at p. 815; *Atchison etc. Ry. Co. v. Smith* (1919) 42 Cal.App. 555 [183 P. 824]; Code Civ. Proc., § 526, subd. (a)(3).)

A paradigmatic illustration of the trial court's equitable powers in aid of protecting its judgments is *Rynsburger v. Dairymen's Fertilizer Coop., Inc.* (1968) 266 Cal.App.2d 269 [72 Cal.Rptr. 102] (*Rynsburger*). There, a group of homeowners filed suit in the Orange County Superior Court against a cooperative to enjoin construction and operation of a plant for the processing of fertilizer on the ground that it constituted an enjoinable nuisance. Proceedings in the suit remained inactive for a period. Meanwhile, two municipalities in which the plant was situated brought suit in the San Bernardino County Superior Court against the cooperative to abate its operations as a public nuisance. Following a lengthy trial, the San Bernardino Superior

Court entered a detailed decree in favor of the plaintiff municipalities, requiring the cooperative to take steps to minimize the adverse effects of its operations on those living nearby. The San Bernardino trial court retained jurisdiction over the cause in order to ensure the cooperative's operations were in conformity with the relief granted.

Evidently dissatisfied with the decree in the San Bernardino suit, the homeowners reactivated their Orange County litigation. But when that matter was set for trial, the cooperative obtained an order to show cause in the San Bernardino County Superior Court to restrain the homeowners from pursuing the Orange County litigation. Equitable relief enjoining the Orange County suit was entered and the homeowners appealed. Affirming the injunction against a continuation of the Orange County proceedings, the court of appeal said this: "The propriety of injunctive relief to prevent conflicting or vexatious litigation has long been established in our law. [Citations.] Where there exists two or more actions involving the same subject matter or the same facts or principles, restraint is necessary to prevent a multiplicity of judicial proceedings. [Citation.] . . . [¶] In summary, the San Bernardino Superior Court's action in restraining the Orange County suit was fully justified since . . . it was empowered to make such orders as necessary to prevent impairment of its judgment and to avoid . . . vexatious litigation." (266 Cal.App.2d at p. 279.)

In its practical significance, we think *Rynsburger* is this case. Although it is true that here, unlike *Rynsburger*, principles of res judicata do not apply, and, again unlike *Rynsburger*, the Alameda Superior Court did not retain jurisdiction to supervise the judgment on the settlement agreement pending appeal, these distinctions are of no moment. As noted, the rationale supporting the rule is a practical one, invoking the trial court's broad equitable powers to preserve its judgments from the threat of impairment by another court of concurrent jurisdiction. That power is as long-standing and as well established in California as it is in other American jurisdictions. Of it, Witkin has said: "An injunction is expressly authorized during an action where it appears that a party is doing or about to do . . . an act . . . that tends to render the judgment ineffective. (C.C.P. 526(a)(3); see *Porter v. Jennings* (1891) 89 C. 440, 444 [26 P. 965] . . . ; *Rohrer v. Babcock* (1896) 114 C. 124 [45 P. 1054] . . . ; *Kendall v. Foulks* (1919) 180 C. 171, 173 [179 P. 886]; *Steele v. Marlborough Hall Corp.* (1929) 100 C.A. 491, 497 [280 P. 380]." (6 Witkin, Cal. Procedure (4th ed. 1997) Provisional Remedies, § 300, p. 239.) These hoary precedents uphold the use of writs of injunction as an auxiliary remedy to protect ongoing litigation from being impaired by collateral acts of one of the parties. But, in principle, they are no

different from what the trial court did in this case—enjoin conduct in another court "tending to render [its] judgment ineffectual." (Code Civ. Proc., § 526, subd. (a)(3); cf. *Hanlon v. Chrysler Corporation* (9th Cir. 1998) 150 F.3d 1011, 1025 [affirming district court's " 'duty and . . . broad authority to exercise control over a class action and to enter appropriate orders [including an injunction] governing the conduct of counsel and parties' "].)

The judgment of the Alameda Superior Court enjoining appellants from further prosecuting the San Diego litigation is affirmed.

Hanlon, P. J., and Woolard, J.,* concurred.

---

*Judge of the San Francisco Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.