HOME FINANCE COMPANY, a CORPORATION, AND A. W. BLACKMAN, AND A. W. BLACKMAN, AS AN INDIVIDUAL, APPELLANTS, v. R. D. BALCOM, J. R. McDANIEL, JR., AND S. L. HARDY, RESPONDENTS.

No. 3359

July 7, 1942.　　　127 P. (2d) 389.

*A. S. Henderson* and *Alfred H. McAdoo,* both of Las Vegas, for Appellants.

*Harold M. Morse* and *Madison B. Graves,* both of Las Vegas, and *Julian Thruston,* of Pioche, for Respondents.

## OPINION

By the Court, TABER, J.:

This appeal and the certiorari proceeding decided this day (Home Finance Co. v. Eighth Judicial District Court of Nevada, cause No. 3352, Nev., 127 P. (2d) 397) are companion cases, and the following statement is intended to serve for both.

On July 11, 1941, Home Finance Company, a corporation, commenced civil action No. 12212 in the Eighth judicial district court, Clark County, against James Sadler, R. D. Balcom, J. R. McDaniel, Jr., and S. L. Hardy, copartners doing business under the firm name and style of Jimmie Sadler. Six causes of action are alleged in the complaint, each based upon the assignment to plaintiff by defendants, for a valuable consideration, of all their interest as sellers in a separate conditional sales contract. The amounts due from the purchasers of merchandise under said contracts are alleged to be mostly or wholly unpaid. The complaint further alleges that in each assignment the partnership

guaranteed payment of the full amount remaining unpaid on the assigned contract, and covenanted that if default should be made in payment of any installment therein provided for, they would pay assignee, on demand, the full amount then unpaid. Judgment is prayed against defendants and each of them for the respective amounts due from the purchasers under said contracts, together with interest and costs of suit.

On July 18, 1941, defendants joined in filing a general demurrer to said complaint. On July 22, 1941, Harry H. Austin was substituted in place of Harold M. Morse as attorney for defendant Sadler, and on the same day entered a separate appearance for him and filed a general demurrer to said complaint in his behalf. On August 7, 1941, the demurrers of all defendants were overruled, and they were given ten days to answer. At the same time leave was granted defendant Sadler to file a "cross complaint or counter claims or cross-relief." By stipulation, August 11, 1941, the defendants represented by Mr. Morse were given until and including September 1, 1941, to answer and further plead to the complaint.

On August 16, 1941, defendant Sadler filed his separate answer to the complaint, and his cross complaint against defendants Balcom, McDaniel and Hardy. His answer alleges, in part, that the partnership was dissolved on December 18, 1940, at which time he surrendered and delivered to the three other partners all the books of account of the partnership, and that he no longer has access to them. In his cross complaint against the other defendants, he alleges, among other things, that all the indebtedness mentioned in the plaintiff's complaint was contracted by the partnership, appeared upon the books of the firm, and was known to all the defendants or could have been known by them by an inspection of the books. The cross complaint further alleges that on December 18, 1940, the four partners entered into an agreement in writing forever

dissolving the partnership, and that by the terms of said agreement defendants Balcom, McDaniel and Hardy agreed to pay all the indebtedness of the partnership, excepting only such bills as might have been contracted or incurred in the name of the firm by defendant Sadler without the knowledge of the other partners.

On August 30, 1941, Balcom, McDaniel and Hardy commenced a separate action, No. 12469, against Home Finance Company and A. W. Blackman in said district court. On September 2, 1941, in action No. 12212, there was filed an order of the district judge dated August 30, 1941, giving defendants in that case ten days from and after final judgment by the trial court in action No. 12469 within which to answer to the merits in case No. 12212. A motion to vacate and annul this order having been thereafter denied by the trial court, Home Finance Company, on October 29, 1941, filed its petition for writ of certiorari in this court (case No. 3352) praying that said order extending time to answer be reviewed and annulled.

In said district court action No. 12469 plaintiffs, on September 3, 1941, filed a verified amended complaint. On the basis of this complaint and the filing of an undertaking the trial court, on the ex parte application of plaintiffs, granted an injunction pendente lite restraining the defendants, until further order of court, from procuring the entry of defaults in, or the prosecution of, any of the legal actions referred to in plaintiffs' complaint, or instituting any other similar legal action or actions. The injunction further restrained defendants from removing any of their assets beyond the jurisdiction of the trial court while the injunction remains in effect.

On September 12, 1941, defendants in said action No. 12469 separately filed general and special demurrers to the amended complaint, and noticed motions for orders dissolving said injunction. On October 21, 1941, the demurrers were sustained, and plaintiffs given ten

days to file a further amended complaint. On the same day, October 21, 1941, the motions to dissolve the injunction were denied. Defendants, on November 21, 1941, appealed to this court from the order denying said motions.

After said application for writ of certiorari was filed (cause No. 3352 in this court), and after this appeal was perfected (cause No. 3359), a second amended complaint was filed in district court action No. 12469. There is no copy of this complaint in the record certified to this court in said certiorari proceeding, nor does a copy of it appear in the record on this appeal. A full copy, however, is set forth both in respondent's answering brief in the certiorari proceeding and in respondents' answering brief on this appeal. In the certiorari proceeding petitioner, in its reply brief, says, "petitioner certainly has no objection to this second amended complaint being before this court if counsel for respondents think it will help them or be in any way enlightening to this court." Likewise, in their reply brief on this appeal, appellants say: "We might very properly raise the point that such second amended complaint should not be considered; but we carefully do not do so. On the contrary, we ask this court to treat such second amended complaint as an admission by respondents against interest. By so doing, not only will certain omissions of the amended complaint be filled in and certain obscurities and ambiguities removed, but by such admission by respondents, certain additional reasons are brought before this court why the injunction in this case was improvidently issued and why it was highly prejudicial for the lower court to deny our motion to dissolve."

Neither in the original complaint in district court action No. 12469 nor in the first amended complaint therein was James Sadler joined as a plaintiff or made a defendant; in the second amended complaint he is made a party defendant along with Home Finance Company and Blackman.

Following is a summary of the pertinent allegations in said second amended complaint:

Plaintiffs were formerly associated with defendant Sadler in the partnership known as "Jimmie Sadler Electric Appliances," the business of which has been discontinued and all its assets disposed of.

James Sadler is made a party defendant instead of being joined with the plaintiffs, because: (1) He withdrew from said firm on December 18, 1940, and relinquished his interest to plaintiffs; (2) he is a party defendant to the suits later mentioned and, from May 1, 1939, to December 18, 1940, was the managing officer of said firm and the person who, in its behalf, executed the assignments of contracts hereinafter mentioned; (3) he violated his duty and obligation to plaintiffs as his partners as hereinafter set out, and entered into a conspiracy with the defendant Blackman to cheat, wrong, and defraud plaintiffs as his partners.

Defendant Blackman has been and is the secretary of Home Finance Company, and as plaintiffs are informed and believe, has at all times been the owner of not less than one third of its capital stock.

Defendant corporation has filed thirty separate actions in the justice's court of Las Vegas township, Clark County, each being entitled "Home Finance Company, a corporation, plaintiff, versus James Sadler, R. D. Balcom, J. R. McDaniel, Jr., and S. L. Hardy, copartners, doing business under the firm name and style of 'Jimmie Sadler', defendants."

The complaints in said actions are based upon causes of action alleged to have grown out of assignments, by defendants to plaintiff, of all their interest in certain conditional sales contracts wherein the partnership was the seller. One hundred separate causes of action, upon similar contracts are alleged in said thirty actions, whereby plaintiff seeks to recover in the aggregate approximately $8,250 besides interest, thirty attorneys' fees aggregating $2,250, and costs. Each of said causes

of action follows the same form and wording, except for appropriate variations as to dates and amounts, and each refers to an exhibit consisting of a copy of a separate conditional sales contract. All of said contracts are in substantially the same form, varying principally in the description of the property sold, the name of the purchaser (obligor), and the dates and amounts to be paid.

All said assignments are in substantially the same form and contain the following provision: "Undersigned guarantees payment of the full amount remaining unpaid hereon and covenants if default be made in payment of any installment herein to pay the full amount then unpaid to Home Finance Company, upon demand. (Signed Jimmie Sadler)."

Home Finance Company has also filed a suit in said district court (No. 12212 heretofore mentioned in this opinion) against said Sadler, Balcom, McDaniel and Hardy. The six causes of action set out in the complaint therein are all identical with those set out in said justice court actions, with the exception of the dates, amounts, names of purchasers and contracts attached as exhibits, and the aggregate amount prayed for in said action No. 12212 is approximately $2,600, besides costs.

There are also pending in said justice's court three other actions wherein Home Finance Company is plaintiff and said Balcom, McDaniel, and Hardy defendants. Six causes of action are alleged in said three actions, all based upon contracts arising out of said Sadler firm business and alleged to have been assigned to Home Finance Company with recourse. The language of said six causes of action is identical with that of the others above mentioned, with the exception of names, dates, amounts, and copies of contracts attached. The aggregate amount prayed for in said justice court actions is approximately $600, besides interest and costs, including three attorneys' fees of $75 each. Plaintiffs have

been informed by defendant Blackman that Home Finance Company owns twenty-five or thirty additional contracts upon which it claims that plaintiffs are liable as guarantors, all arising out of the same partnership business; that said Blackman threatens and intends to file additional suits against plaintiffs based upon said contracts, and said suits will be filed on behalf of said Home Finance Company unless restrained by order of said district court. Said twenty-five or thirty actions will be filed in the justice's court when the amounts alleged to be due on the respective contracts are less than $300.

There is also an action now pending in said justice's court wherein said Blackman is plaintiff and said Sadler, Balcom, McDaniel, and Hardy are defendants. In this action Blackman seeks to recover for wages and warehouse rent due from said last-named defendants, said claims arising out of the business of said firm.

Fundamentally the basis of the alleged liabilities of plaintiffs upon the numerous contracts above mentioned is the same in each case, namely: (1) The assignment on behalf of the partnership by James Sadler; (2) the alleged defaults of the purchasers of merchandise; (3) the alleged liability of the members of the firm as guarantors under the terms of the assignments.

Plaintiffs believe they have several good and sufficient defenses to each and every cause of action pending or mentioned above. Said defenses rest upon equitable as well as legal grounds, and are based upon the following facts: (1) It is alleged in twenty-eight of said causes of action that no payments whatever were made by the purchasers after the signing of the contracts and the delivery of the merchandise, and that, with few exceptions, the payments alleged to have been made were almost negligible; (2) of over sixty contracts alleged in the pending suits to have been purchased by Home Finance Company prior to January 1, 1940, all were in default before March 1, 1940, many had been in default

for more than six months at that time, and plaintiffs are informed that approximately the same situation exists as to all contracts held by defendant corporation; (3) though all said contracts carried a reservation of title to the electrical appliances sold which were of the reasonable value of the amount due with the right to repossess the same in event of default, Home Finance Company "does not appear to have repossessed any of said appliances or to have made demand upon the purchasers for payment or to have attempted to collect the same from said original obligors, all in violation of the agreement with and obligation of said Home Finance Company to the detriment of these plaintiffs," and the failure and neglect of said company to pursue its remedy against the merchandise and the purchasers was part of the scheme of defendant Blackman to cheat, wrong and defraud plaintiffs as hereinafter set out.

Defendant Blackman, who for several years prior to May 1939 has been a public accountant, auditor and business consultant in Las Vegas, induced plaintiffs to form said partnership and assisted in preparing the partnership agreement. He knew plaintiffs were advancing all the capital and assured them that they were protected against any liability for debts other than those to which they would personally assent. He represented to them that he would install a proper bookkeeping system showing the financial condition of the firm at all times and would make periodical reports to them reflecting the firm's assets and liabilities. In reliance on the foregoing, and knowing that said Blackman was competent to properly supervise the bookkeeping and audit the books, plaintiffs were instrumental in employing him as the chief accountant and auditor of said firm. It was understood and agreed that he would be the business manager of the firm and that plaintiffs would not be active or required to devote any time to the management thereof.

Thereafter defendant Blackman promoted and organized defendant corporation, Home Finance Company,

contributed one third of its capital, became its secretary and sole managing officer and, acting for said corporation, immediately began acquiring the said conditional sales contracts taken by Sadler for the firm. He failed and neglected to keep proper books and records in the partnership, and wrongfully concealed from plaintiffs his connection with Home Finance Company, the extent and amount of the outstanding conditional sales contracts, and the nature of the alleged liabilities of plaintiffs. He falsely and fraudulently represented to plaintiffs that said firm was at all times very profitable, the books and records well kept and its affairs in good shape, with assets greatly exceeding its liabilities. Said misrepresentations were made by him as part of a scheme to cheat, wrong and defraud plaintiffs through the acquisition by Home Finance Company of large amounts of such conditional sales contracts from the partnership by assignment from defendant Sadler without the knowledge and consent of plaintiffs, and by thereafter failing to pursue the original obligors on said contracts or to repossess the merchandise, and by extorting the payment of the obligations of guarantors from plaintiffs with penalties of interest at ten percent and twelve percent per annum. Sadler was a party to said scheme with said Blackman, and conspired and connived with him to conceal the facts from, and to misrepresent the facts to, plaintiffs with respect to said dealings and transactions. Defendant corporation is also chargeable with notice and knowledge of the information possessed by Blackman with respect to the affairs of the partnership and the reliance of plaintiffs upon his misrepresentations, and is chargeable with responsibility for his fraud, concealment and misrepresentations so made by him to plaintiffs with respect to the amount and condition of the contracts so purchased and held by the corporation.

In the fall of 1940 plaintiffs began to learn of misrepresentations, fraud and concealment on the part of said Blackman and Sadler. Blackman was discharged as

auditor and accountant about November 15, 1940, the partnership with Sadler was dissolved on or about December 18, 1940, and plaintiffs succeeded to all available firm assets and proceeded to liquidate same and apply the proceeds upon firm liabilities. In addition thereto plaintiffs have advanced $8,100 in payment of firm obligations, all of which was made necessary by said wrongful acts of Blackman and Sadler.

Plaintiffs, through said false and fraudulent misrepresentations of Sadler and Blackman, were induced to give an agreement to said Sadler indemnifying him from any liability to creditors of the partnership. For the purpose of obtaining said indemnity agreement, said defendants represented to plaintiffs that the partnership was in good financial condition and had assets far in excess of its liabilities, although said defendants well knew said representations to be false. Plaintiffs have now discovered the falsity of said representations and repudiate said indemnifying agreement and ask that it be cancelled and annulled.

By reason of all the foregoing facts, Home Finance Company is estopped to claim or assert any claim against plaintiffs for alleged liability as guarantors of said contracts, and plaintiffs should be released and discharged on account thereof.

Plaintiffs have been released and discharged from any liability to defendant corporation because of its failure to promptly notify them of the defaults under said contracts, and to tender a return thereof, and to make demand for payments. Said corporation is guilty of laches in the premises and cannot now assert liability against plaintiffs. By reason of the failure of the company to promptly notify plaintiffs of the existence and ownership of said contracts and the various defaults thereunder, to make demand upon plaintiffs for payment thereof, and to tender a return of said contracts so that plaintiffs could proceed against the original obligors or repossess the merchandise covered thereby, said corporation has elected to retain said contracts and to

release and discharge plaintiffs from liability thereon, and is now estopped to rescind or revoke that election. The merchandise covered by said contracts has depreciated in value, and the present location thereof and the whereabouts of the purchasers are unknown to plaintiffs.

Plaintiffs are all licensed medical doctors practicing at Las Vegas, are subject to call at any time of day or night, have many patients who depend on them for medical attention, and are each in great demand. Defendant Blackman, acting for and on behalf of Home Finance Company, knew that the filing of numerous suits against plaintiffs would harass and annoy them and tend to injure their good names and reputations, and that it would be a practical impossibility for plaintiffs to give the time and attention necessary to defend all of said more than one hundred causes of action now pending in the justice's court. Defendants filed said justice's court actions for the deliberate purpose of hampering, harassing and annoying plaintiffs, with the knowledge that said suits or causes of action could not be consolidated for trial, and that the trial and proper defense thereof, as separate actions, would require hundreds of days time. They knew that the maintenance of said actions would cause plaintiffs, as defendants therein, great and irreparable damage, and that plaintiffs' patients would be annoyed and harassed, and the practice of plaintiffs immeasurably damaged and irretrievably lost. Plaintiffs have a just set-off and counterclaim against defendants Blackman, Sadler and Home Finance Company for damages, in excess of the jurisdiction of a justice's court, resulting from the misconduct of said Blackman and Sadler, and they will be unable to assert and prove the same if required to defend the said multitude of suits now pending in said court. Defendants Blackman and Home Finance Company have delayed filing additional suits upon other contracts for the purpose of further harassing and annoying plaintiffs.

Practically speaking, the same evidence will be used in establishing the defense to all the causes of action in the pending suits and of any other causes of action based upon contracts of said partnership, and the same evidence will be used to establish the counterclaims, set-offs or cross demands of plaintiffs; and in justice and equity of all such causes of action should be set forth in one pleading and tried in a court having jurisdiction to grant complete and adequate legal and equitable relief to all the parties.

Defendants Blackman and Home Finance Company filed said actions in the justice's court with the wrongful intent and purpose of annoying and harassing plaintiffs, in the hope of preventing them from making proper defense thereto and for the purpose of procuring an improper judgment or unjustly coercing plaintiffs into making a settlement. Justice and equity will be subserved by requiring defendants, and each of them, to bring all their alleged causes of action against plaintiffs individually or collectively, growing out of said partnership business, into said district court, and to set them up by appropriate pleading in this action, to the end that plaintiffs be permitted to meet the allegations thereof and plead their defense thereto and set up any counterclaim, set-off or cross demand relevant or pertinent thereto.

Appellants point out that in the first amended complaint in district court action No. 12469 there is uncertainty as to who the defendants are in the justice court actions, unless it be presumed that the only defendants therein were "these plaintiffs," namely, Balcom, McDaniel and Hardy; in the second amended complaint, however, it appears that in some of said justice court actions and in said district court action No. 12212 Sadler, Balcom, McDaniel, and Hardy are defendants, while in other of said justice court actions, Balcom, McDaniel, and Hardy, but not Sadler, are defendants.

Two causes of action are alleged in said first amended complaint. In the first, plaintiffs allege that by reason

of defendants' wrongs plaintiffs sustained a cash loss of at least $13,000. In the second, it is alleged that plaintiffs, relying upon the misrepresentations and fraudulent conduct of defendants, and as a result of their alleged conspiracy, were prevailed upon to invest and did invest $13,000 in the partnership enterprise, none of which has been returned to plaintiffs, that defendants have been unjustly enriched thereby, and that there is due and owing from them to plaintiffs at least $13,000.

Besides asking that the defendants be enjoined, pendente lite, from prosecuting the justice court actions and district court action No. 12212, the prayer of said first amended complaint asks $13,000 actual and $25,000 exemplary damages; it further prays that the defendants be enjoined from removing any of their assets beyond the jurisdiction of the district court so long as the injunction remains in effect.

The prayer of said second amended complaint does not directly ask for any damages. It prays that defendants be enjoined from prosecuting the various actions mentioned, or any other similar action arising out of or connected with said partnership, and that upon the trial the injunction pendente lite be made permanent. It further prays that defendants, and each of them, be ordered to bring into the district court each and every claim they or any of them may have against the plaintiffs or any of them, connected with or arising out of said partnership firm or business or the winding up thereof by plaintiffs; further, that plaintiffs be permitted to plead to such claims as may be made by defendants or any of them, and for a complete adjudication thereon. It is further prayed that the former injunction be continued in full force and effect until further order of said district court, that said James Sadler be brought into court as a party defendant and required to plead to said second amended complaint, and for such other and further relief as to the court may seem fair, just and equitable.

Appellants' main contention is that respondents,

instead of commencing a separate suit (district court action No. 12469), should have pleaded their alleged cause of action therein as a defense and counterclaim in district court action No. 12212. Sec. 8602 N. C. L. 1929, provides, in part, that the answer of the defendant shall contain: "1. * * *. 2. A statement, in ordinary and concise language, of any new matter constituting a defense or counterclaim." Sec. 8603 N. C. L. 1929 (amended, Stats. of Nevada, 1931, chap. 148, p. 239) provides: "The counterclaim mentioned in the last section shall be one existing in favor of the defendant and against a plaintiff, between whom a several judgment might be had in the action, and arising out of one of the following causes of action: 1. A cause of action arising out of the transaction set forth in the complaint as the foundation of the plaintiff's claims, or connected with the subject of the action. * * *" Sec. 8604 N. C. L. 1929 reads: "If the defendant omit to set up a counterclaim in the cases mentioned in the first subdivision of the next preceding section, neither he nor his assignee can afterward maintain an action against the plaintiff therefor."

It is appellants' position that, had respondents pleaded their alleged cause of action as a defense and counterclaim in No. 12212, they not only could have obtained an injunction pendente lite restraining the prosecution of the justice court actions, but could also have obtained any and all other relief, if any, to which they were or are entitled.

■ Under our practice, equitable as well as legal defenses may be set up in a law action, and in the great majority of such cases complete and adequate relief can be given. However, special circumstances sometimes require that the preventive remedy of injunction be granted defendant in the law action in order that he may not suffer irreparable injury. 32 C. J. 99, 100, n. 52. As stated by Pomeroy: "There are, however, special circumstances in which a resort to the

injunctive jurisdiction may still be necessary, in order to prevent a failure of justice. These cases may, I think, be reduced to a few general classes: 1. Where it is essential to promote the ends of justice that an entire controversy should be determined in one proceeding, so that the rights and duties of all parties interested may be finally settled, it may be necessary to restrain other suits, so as to prevent the pendency of two or more actions involving the same subject-matter, or to prevent a partial litigation of the controversy, or to prevent a multiplicity of suits depending upon the same facts or principles. In short, the jurisdiction must sometimes be exercised to prevent a multiplicity of actions, or partial investigations which would work injustice. * * *" Pomeroy's Equity Jurisprudence, 5th Ed., vol. 4, sec. 1371.

■ Had Home Finance Company instituted action No. 12212 only, it is clear that respondents would have been required to plead, by way of answer and counterclaim in that action, all the matters they have alleged in their complaint in action No. 12469. But, as we have seen, said corporation also brought a large number of suits in the justice's court, all the alleged causes of action in which could have been joined with those in district court case No. 12212. Hartford Mining Co. v. Home Lumber & Coal Co., 61 Nev. 12, 114 P. (2d) 1091. The justice's court has no power to order a consolidation of these numerous actions, and the amount of respondents' alleged counterclaim is greatly in excess of that court's jurisdiction.

■ In determining whether, in cases of this kind, injunctive relief should be granted on the ground of multiplicity of suits, the court will take into consideration the facts and circumstances of the particular case. 28 Am. Jur. 247, n. 1. In exercising our discretion, we have not overlooked the "balance of convenience rule." High on Injunctions (4th ed.), sec. 13; 32 C. J. "Injunctions," sec. 65.

■ It is the opinion of the court that the preliminary injunction was properly granted insofar as it restrains, pendente lite, the justice court actions and district court action 12212. Atchison, T. & S. F. Ry. Co. v. Smith, 42 Cal. App. 555, 183 P. 824; Kaloutsis v. Maltos, 9 Cal. (2d) 493, 71 P. (2d) 68; Gulf, C. & S. F. Ry. Co. v. Pearlstone Mill & Elevator Co., Tex. Com. App., 53 S. W. (2d) 1001; Standard Inv. Co. v. Dowdy, Tex. Civ. App., 122 S. W. (2d) 1107.

The Blackman case for personal services and warehouse rent is not to be included as one of the justice court cases, further prosecution of which is restrained by the preliminary injunction. We say this not merely because that action was not mentioned in the first amended complaint upon which the injunction pendente lite was based, but because it is not the same kind of case as, nor a case similar to, the other justice court cases and district court case 12212. The cause of action alleged does not arise out of the same transactions, or from the same source, as those in the other suits.

■ That portion of the injunction pendente lite which restrains defendants in district court action 12469 from further prosecuting the actions above mentioned, further restrains them from instituting "any other or near, similar or comparable legal action or actions." This latter provision is too broad. The only threatened actions, according to the allegations of either the first or second amended complaint, are of the same kind and nature as those already commenced. The injunction pendente lite should, therefore, restrain only the commencement of threatened suits based on alleged assignments to Home Finance Company, by the partners, of their interests as sellers in conditional sales contracts such as those involved in the actions already commenced.

■ There has not been pointed out, nor have we been able to find, in either the first or second amended complaint, any allegation supporting that provision of the injunction pendente lite which restrains Home Finance

Company and Blackman from removing any of their assets beyond the jurisdiction of the trial court. That part of said injunction, therefore, has no place therein.

■ Appellants further urge that respondents were not entitled to the injunction pendente lite, for the reason that they had not first established their right at law even in one case. We are satisfied that this rule is not applicable in the instant case. Rankin v. Eppler, 106 Kan. 131, 186 P. 1008; 30 C. J. S., Equity, sec. 17; Joyce on Injunction, vol. 1, p. 809, n. 26.

■ It is also contended by appellants that respondents were not entitled to the injunction pendente lite for the prevention of a multiplicity of suits, because the parties are not the same in the various litigations. They are, however, substantially the same, and that is all that is required where, as here, all the causes of action arise out of the same transactions and are connected with the same subject matter.

Appellants say further that the trial court was without jurisdiction to grant the preliminary injunction to prevent a multiplicity of actions, for the reason that all the parties have no community of interest in the subject matter. A sufficient answer to this contention is to be found in sec. 269A of the Fifth Edition of Pomeroy's Equity Jurisprudence. It may further be observed that we are not dealing here with a bill of peace, nor with a suit by individuals against the multitude, or a suit by the multitude against individuals.

■ Regarding the contention that respondents should have been required to apply for an injunction in the first district court action rather than in a separate suit, we note: (1) No authority has been cited in support of this contention; (2) in the many cases we have examined, where equity has exercised its jurisdiction to restrain actions at law, the prevailing practice has been for the defendants in the law action to ask for the preliminary injunction in a separate suit; (3) in sec. 55 of High on Injunctions (4th ed.) the author says: "In the

exercise of its jurisdiction to restrain proceedings at law a court of equity usually requires that a bill should be filed, or an independent suit instituted for the purpose of obtaining relief by injunction."

The district court is directed to modify the injunction pendente lite in accordance with the views herein expressed. In all other respects the order appealed from is affirmed. The respective parties will pay their own costs.