[Sac. No. 4233. In Bank.—March 29, 1930.]

H. A. McDONALD, Appellant, v. SMOKE CREEK LIVE STOCK COMPANY (a Corporation) et al., Respondents.

W. T. Plunkett and H. C. Symonds for Appellant.

Hawkins, Mayotte & Hawkins, Price & Hawkins, Prince A. Hawkins, McCutchen, Olney, Mannon & Greene, John F. Cassell and Thatcher & Woodburn for Respondents.

RICHARDS, J.—This action was instituted by the plaintiff for the purpose of having his title quieted as against the defendants to a certain large tract of land, embracing about twelve thousand acres, lying and being in the county of Lassen, and also as to certain water rights and contractual rights having their origin in certain uses made of the waters which have their source in a large lake upon said land, and which water and contract rights are embraced in a property known as the Madeline Irrigation Project. The plaintiff alleges that the defendants claim to have some right or title in or to or some lien upon said lands and properties, but which claim of right or title has no foundation in law or fact. The defendants appeared in said action and by their several answers not only denied any right or title in or to said lands and properties, or any portion thereof, to be in the plaintiff, but also set forth their and each of their respective ownership or interest in said properties and in the whole thereof. The cause came to trial upon the issues as thus framed before the court sitting without a jury and resulted in a judgment in favor of the defendants and each of them, based upon a finding of the trial court that the plaintiff had no right, title or interest in said premises or any portion thereof, and that the defendants had both record title and title by adverse possession in and to their respectively asserted interests in said properties. This is an appeal from such judgment.

The plaintiff and defendants each claim title from a common source. On and prior to November 1, 1910, the foregoing properties were owned by a corporation known as Madeline Meadows Land and Irrigation Company, which corporation on said last-named date borrowed from Farwell Trust Company of Chicago, Illinois, the sum of $250,000, evidenced by certain interest-bearing promissory notes, to secure which it executed and delivered a certain instrument in the form of a trust indenture to the Mercantile Trust Company, a California corporation, as trustee, for

its aforesaid creditor, Farwell Trust Company. The Madeline Meadows Land and Irrigation Company having later defaulted in certain payments of principal and interest falling due upon said promissory notes, the properties covered by said instrument were attempted to be sold under the trust provisions thereof, and were by such trustee transferred to the purchaser at said sale, who by certain mesne conveyances transferred certain portions of said properties to the defendants herein, who now claim to own and hold the same by virtue of the title thereto thus acquired. The plaintiff's asserted claim of title to said property is based upon a conveyance executed on January 3, 1918, by Madeline Meadows Land and Irrigation Company to W. K. Ephraim and wife, and by a subsequent conveyance thereof made by the latter grantees to plaintiff on June 20, 1925.

The primary and in fact the controlling contention made by the plaintiff upon the trial of this action and urged as his chief ground of reversal upon this appeal is that the aforesaid instrument executed by the Madeline Meadows Land and Irrigation Company as security for its indebtedness to the Farwell Trust Company, and which forms the foundation of the defendants' claim of title to the lands and properties involved in this action, was not in law or fact such an instrument that the trustee named therein was entitled to claim to be a trust deed so as to justify the foreclosure thereof by means of the trustee's sale undertaken to be made by said trustee, by means of which the defendants allege themselves to have become respectively the owners of the entire title of, in and to said properties and the whole thereof. The instrument in question was dated November 1, 1910, and after reciting the execution of certain promissory notes made and executed of even date therewith evidencing the then existing indebtedness of Madeline Meadows Land and Irrigation Company to Farwell Trust Company, in an amount aggregating the said promissory notes, proceeds to set forth that the Madeline Meadows Land and Irrigation Company for the purpose of securing the payment of the principal and interest to become due upon said promissory notes "does hereby grant, bargain, sell, assign and transfer unto said party of the second part [Mercantile Trust Company], its successors and assigns forever, as trustee of the trust herein and hereby created and

declared, all and singular the property, both real and personal, which is hereinafter particularly described [describing it] . . . to have and to hold all and singular the property herein granted or intended to be granted, and every part and parcel thereof, with the appurtenances thereunto belonging, unto said trustee, its successors and assigns forever, for the purpose of securing the payment of both the principal and interest to grow due upon the said promissory notes unto the owners and holders thereof without any preference or priority of any note over any other note, and for the purpose of securing the performance of the covenants and promises of the party of the first part herein contained, in accordance with the terms and provisions of said promissory notes and of this indenture, upon trust to sell as an entirety or in parcels as it may elect, free and clear of any right of redemption on the part of the party of the first part and its successors and assigns all and singular the property then subject to the charge of this indenture, and to apply and dispose of the proceeds as hereinafter provided, if and only if default shall be made by the party of the first part in the payment of either the principal or interest to grow due upon any of said promissory notes.'' The instrument further proceeds to set forth the terms and conditions attending said sale and form and content of the notices to be given, as preliminary thereto by said trustee. The instrument further provides that ''whenever conditions shall occur which shall give rise to the right or duty upon the part of the trustee to exercise the power of sale hereinbefore conferred upon it, then the trustee may forthwith proceed to protect and enforce the rights of the holders of said promissory notes under this indenture by commencing and prosecuting in any court of competent jurisdiction a suit or suits in equity or at law for the foreclosure of this indenture, or for the purpose of obtaining the aid and direction of such court in the execution of the trusts hereby created and the powers hereby granted, or for the purpose of obtaining any other appropriate legal or equitable remedy. . . . No remedy herein provided for the benefit of the holders of said promissory notes is intended to be exclusive of any other remedy, but every such remedy shall be deemed to be in addition to any other remedy given hereunder, or now or hereafter pro-

vided by law, and may be availed of by the trustee from time to time as often as the latter deems expedient. No failure or omission on the part of the trustee, or of any holder of any of said promissory notes, to exercise any right or power hereby conferred, shall impair any such right or power, or shall be construed a waiver of the right to exercise the same.''

It is the contention of the appellant that the foregoing instrument by virtue of the dual nature of the remedies provided therein for the enforcement thereof, as well as by the nature of the properties, real and personal, to which its descriptions related, was such an instrument as could not be construed to possess the characteristics of a deed of trust so as to entitle the trustee to undertake to carry into effect a foreclosure thereof in the form and manner which gave rise to the title which the defendants now claim to own and hold respectively in said properties; but that such an instrument was and is in legal effect none other than an equitable mortgage, requiring foreclosure proceedings in an appropriate action, and which proceedings, though commenced by said trustee, never having been consummated, the defendants have no right, title or interest in said properties or any portion thereof. In support of this contention the appellant upon the trial of this action undertook to show, and in fact did show, that in the year 1913 the Madeline Meadows Land and Irrigation Company being in default of its payments upon the principal and interest of said promissory notes, the Mercantile Trust Company commenced an action for the foreclosure of said instrument in the Superior Court in and for the county of Lassen. On November 13, 1914, the defendants in that action filed their answer and cross-complaint. Said action was not brought to trial within five years thereafter, and was for that reason, on February 21, 1920, dismissed upon motion of the defendant, Madeline Meadows Land and Irrigation Company, for want of prosecution. The record herein further discloses, however, that on September 24, 1917, after due notices given thereof and while said foreclosure suit was still pending, the Mercantile Trust Company as trustee, under the terms of said instrument and pursuant thereto, proceeded to hold and conduct a trustee's sale of the properties described therein, at which sale R. M.

Sims and Paul McDonald were the bidders for and the purchasers of said properties, and to whom as such purchasers and on September 25, 1917, the Mercantile Trust Company made and executed its deed to the whole of said properties under and pursuant to the terms and conditions of said instrument and of such sale, and that the aforesaid Sims and McDonald have by mesne conveyances transferred unto the defendants herein all of the right, title and interest respectively which they and each of them acquired by virtue of such sale.

As to the foregoing contention of the appellant to the effect that the instrument in question amounted to nothing more than an equitable mortgage, requiring foreclosure in the ordinary course of a legal proceeding, we are of the opinion that this contention has no merit. This court at an early date decided that notwithstanding the statutory proceeding embodied in section 726 et seq., of the Code of Civil Procedure, providing for the foreclosure of mortgages, there was nothing therein which prevented the making and execution of trust deeds as security for obligations, by the terms of which the creditor or his trustee might be empowered to sell the premises therein described upon default in the payment of the debt secured thereby, and that upon the conduct of a sale in accordance with the terms of the power thus conferred the title to the premises granted by way of security in that form passed to the purchaser upon the execution of a deed by such trustee. (*Grant* v. *Burr*, 54 Cal. 298; *Bateman* v. *Burr*, 57 Cal. 480; *Bell Silver etc. Min. Co.* v. *First Nat. Bank*, 156 U. S. 470 [39 L. Ed. 497, 15 Sup. Ct. Rep. 440, 443, see, also, Rose's U. S. Notes].) The law affecting the validity of trust deeds having been thus early established has continued to be the law of this state with relation to that form of security and many thousands of trust deeds have been executed and enforced and the title to innumerable pieces and vast areas of property passed thereunder; and it has been long customary in the form and content of such trust deeds to provide for the foreclosure thereof, either by an action of foreclosure in the courts or by a trustee's sale, at the option of the trustee or beneficiary thereunder. In the case of *Bell Silver etc. Min. Co.* v. *First Nat. Bank, supra,* it was decided by the Supreme Court of the United States, Mr. Justice Field

writing the opinion, that: "The power of sale in the indenture, whether we call it a deed of trust or a mortgage, does not change its character as an instrument for the security of the indebtedness designated, but it is an additional authority to the grantee or mortgagee, and if he does not choose to foreclose the mortgage by any of the ordinary methods provided by law, he can proceed under the power added for the sale of the property, to obtain payment of the indebtedness. The insertion of a power of sale does not affect the mortgagor's right to redeem so long as the power remains unexecuted and the mortgage is not, as it may be, foreclosed in the ordinary manner, but when a sale is made of the interest of the mortgagor, his right is wholly divested, embracing his equity of redemption." It follows from the well-established law as set forth in the foregoing decisions and from long-established custom in conformity therewith that the fact that the instrument herein in question invests the creditor or his trustee with the dual forms of remedy provided therein, does not render such instrument subject to the appellant's contention that it amounts to no more than an equitable mortgage, requiring foreclosure in the form of an action provided for in section 726 et seq. of the Code of Civil Procedure. The appellant, however, makes the further contention that the creditor or his trustee having, as above stated, commenced an action for the foreclosure of said instrument in the courts of law, an election to pursue that form of remedy had thus been made, which prevented the creditor or his trustee from thereafter undertaking to foreclose the instrument through the form and procedure of a trustee's sale. We are constrained to hold that this contention is also without merit in view of the decision of this court in the case of *Mayhall* v. *Eppinger*, 137 Cal. 5 [69 Pac. 489, 490], wherein this court not only upheld the validity of a trust deed containing the foregoing dual provisions, but further upheld the rights of the creditor or his trustee to conduct a trustee's sale, even though he had previously commenced a foreclosure action which was still pending and undetermined. In discussing this situation the court said: "It is quite probable that Eppinger discovered, after he had filed his complaint, that he had misconceived the meaning of the deed and his rights under it, and thereupon concluded to go no further with his action,

but to proceed to sell as trustee under his deed. This we think he could do without having first dismissed the action, and his proceeding to act as trustee is an acceptance of the trust.'' The fact that the trustee under the instrument here in question undertook the foreclosure of said instrument through the form and conduct of the trustee's sale, upon which the title of the respondents to the several properties affected by the instrument is founded, while the action theretofore instituted in the courts for the foreclosure of the instrument was pending, brings the instant case directly within the holding of this court in *Mayhall* v. *Eppinger, supra;* and the further fact that said legal action was subsequently dismissed for want of prosecution in accordance with the statutory provisions providing for and requiring such dismissal cannot be held to have given the appellant any further right in the premises, since it is well settled that the dismissal of action for that cause in the manner which the statute provides does not amount to a judgment upon the merits by which the plaintiff in such action is bound.

It follows from the foregoing considerations that the trial court was correct in its findings of fact and conclusions of law and in the decree based thereon, determining that the plaintiff by virtue of the conveyance to him of said premises, having for its foundation the series of conveyances following the deed made on January 3, 1918, by Madeline Meadows Land and Irrigation Company to W. K. Ephraim and wife, obtained no title to the premises and properties in question, and was hence entitled to no relief in this action. It would seem to be sufficient to rest the decision of this cause upon this conclusion. But there have been certain other proceedings heretofore undertaken by the parties to this immediate controversy or their forbears, in various other tribunals, which it would seem should be referred to as enforcing our foregoing conclusions. In the year 1914, when the Mercantile Trust Company of San Francisco was threatening to institute a proceeding for the foreclosure of the foregoing trust instrument through a trustee's sale thereunder, the Madeline Meadows Land and Irrigation Company commenced an action in the Superior Court in and for the county of Lassen against the Mercantile Trust Company of San Francisco and Farwell Trust Company of Chicago

et al., to enjoin said defendants from selling or attempting to sell the aforesaid lands and properties of the Madeline Meadows Land and Irrigation Company, or any portion thereof, under the provisions of said deed of trust as threatened by said defendants. This action, after the appearances of the defendants named therein in the form of answers fully setting forth the rights of them and each of them to proceed to sell said properties under the power contained in said trust instrument, came to trial before said court, with the result that on December 8, 1914, a judgment was duly entered therein, declaring and decreeing "that the Mercantile Trust Company of San Francisco is entitled to proceed under the power contained in the trust deed already alleged and set forth in the plaintiff's complaint to sell, and sell, the property therein described and referred to, in accordance with said trust deed," and that the plaintiff take nothing by said action. This judgment, not having been appealed from, in due course became final and must be held to have been *res judicata* as to the issue thus directly decided therein, and being thus binding upon the plaintiff in said action must also be held to have been binding upon the plaintiff herein holding, as he does, by mesne conveyances from the Madeline Meadows Land and Irrigation Company made subsequent to said decision.

It further appears herein that on July 12, 1919, W. K. Ephraim and A. F. Ephraim, his wife, the immediate grantees from the Madeline Meadows Land and Irrigation Company, as above set forth, commenced an action in the Federal District Court for the Northern District of California against the Madeline Water Company, one of the defendants in the present action, and also against the Nevada & California Land and Live Stock Company, the predecessor in interest of the main defendant herein, Smoke Creek Live Stock Company, the purpose of which was to quiet the title of the plaintiffs in that federal action to the properties involved herein. Said action came before said court upon the direct issue as to the right of the plaintiffs therein by virtue of their conveyances from the Madeline Meadows Land and Irrigation Company to maintain the same, and was decided upon that issue after a trial upon the merits before Judge Rudkin, who on November 13, 1920, made and entered a decree expressly adjudicating that the

plaintiffs in said action had no title to the properties involved therein and which were the same properties as those involved in the present action. The plaintiffs in that action appealed to the Circuit Court of Appeals for the Ninth Federal District, which court on August 7, 1922, affirmed the decree of the District Court, Judge Gilbert writing the opinion, concurred in by Justices Ross and Hunt, wherein that court decided not only that the decision of the Superior Court above referred to was *res judicata* as to its interpretation of the trust deed in question, but that the judgment of dismissal of the foreclosure action above referred to "is in no sense *res judicata* of any question involved therein." (*Ephraim et ux.* v. *Nevada & California Land & Live Stock Co. et al.*, 282 Fed. 610, 612.) A writ of *certiorari* sought by the plaintiffs to the Supreme Court of the United States was denied by that tribunal on January 8, 1923, 260 U. S. 748 [67 L. Ed. 494, 43 Sup. Ct. Rep. 248]. It would seem also that this action on the part of the predecessors in interest of the plaintiff herein, which thus became a finality, was also *res judicata* as to the rights and interests of the plaintiff in the present action to the properties involved in both.

We might go further in this decision to determine the other issues presented upon this appeal and which relate to the finding of the trial court in favor of the respondents upon the issue of adverse possession; but since the determination of that question involves a review of the evidence presented thereon before the trial court we do not deem it necessary to pass upon such issue, in view of the fact that the questions already herein considered are fully and finally determinative of the rights of the parties to this appeal.

The judgment is affirmed.

Shenk, J., Seawell, J., Preston, J., Curtis, J., Langdon, J., and Waste, C. J., concurred.