[Civ. No. 13591. Second Dist., Div. Three. Dec. 19, 1942.]

FREDERICK CECIL BARTHOLOMEW, a Minor, etc., et al., Respondents, v. CECIL LLEWELLYN BARTHOLO-MEW et al., Appellants.

Leonard J. Meyberg, in pro. per., and Paul M. Joseph and Mitchel S. Meyberg for Appellants.

Herzbrun & Chantry, Ralph C. Curren, E. W. Miller and Henry Lockwood for Respondents.

SHINN, J.—Defendants Cecil and Lilian Bartholomew and Leonard J. Meyberg appeal from a judgment enjoining them permanently from further prosecuting certain litigation pending in the Superior Court of Los Angeles County against plaintiff Frederick C. Bartholomew, a minor, Millicent Bartholomew, his guardian, and others, and from commencing, prosecuting or suffering to be prosecuted any other actions or proceedings wherein it shall be asserted that defendants or either of them have any interest in the assets of the estate of plaintiff Frederick C. Bartholomew (herein generally referred to as plaintiff), or wherein it shall be asserted that any of the proceedings theretofore taken in the matter of the guardianship of said minor or the adoption proceeding here-

inafter referred to were procured by fraud, collusion, conspiracy or false testimony or that the same were made or taken by the court without jurisdiction. It is assumed by the parties to the appeal that the injunction is broad enough to cover three pending actions hereinafter referred to and we shall so consider it.

In support of his right to injunctive relief plaintiff relies upon several principal findings conforming to allegations of his complaint, namely, that defendants are engaged in a conspiracy to gain possession and control of his earnings as a motion picture actor by compelling settlements of their asserted claims by means of numerous legal proceedings instituted for the purpose of causing him great expense in the defense thereof and publicity which is harmful to him in his career as an actor; that three pending actions are among the proceedings instituted in furtherance of the conspiracy; that all of the issues in said actions have been previously determined adversely to the defendants by final orders and judgments in other actions and proceedings; from which facts the court concluded that the present action was a proper one for plaintiff to prosecute in order to defend himself against a multitude of suits.

Millicent Bartholomew is the paternal aunt, the adoptive mother, and guardian of the person and estate of plaintiff. Defendants Cecil L. and Lilian M. Bartholomew are his natural father and mother; Hilda and Eileen Bartholomew are his sisters. Defendant Leonard J. Meyberg is an attorney at law, allegedly acting in concert with defendants Bartholomew in the actions the prosecution of which is stayed by the injunction.

Plaintiff was brought from England to the United States by Millicent and as a young boy, known as Freddie Bartholomew, became a successful and popular juvenile motion picture actor. Millicent was appointed guardian of his person and estate by the Superior Court of Los Angeles County October 22, 1935. Cecil and Lilian Bartholomew came from England to Los Angeles and made in the guardianship proceeding a motion to vacate the order appointing Millicent as guardian. Leonard J. Meyberg represented them in that proceeding but he was discharged on June 3, 1936, and other attorneys were employed. The motion was denied and the guardian having filed her first account, Lilian in May, 1936, filed

objections to the accounting and a motion for termination of the guardianship and the removal of Millicent. Cecil and Lilian through their attorney Leonard J. Meyberg also filed actions Nos. 401182 and 401214 against Millicent and Frederick for an accounting of money received as Frederick's earnings. Other counsel having been substituted in his place on June 3, 1936, the controversy respecting guardianship was compromised and a stipulation was entered into June 10, 1936, supplemented later by further stipulations of June 24, 1936, and September 10, 1936. The important provisions of the stipulation were the following: Millicent was to remain as guardian of the person of plaintiff but resigned as guardian of his estate in favor of Union Bank & Trust Company of Los Angeles. Millicent's account was to be approved in all respects and Lilian's appeal which she had taken from the order theretofore made denying her motion to vacate Millicent's appointment was to be withdrawn; it was provided that the making of the stipulation should not be deemed an "abandonment, relinquishment or emancipation" of plaintiff by his parents. It was agreed that Millicent should continue as guardian of the person of plaintiff during his minority and that he and his parents might visit each other at all reasonable times; that from cash on hand in the estate of plaintiff and from funds to be earned certain sums should be paid to Cecil to reimburse him for expenses, which sums were thereupon assigned to his counsel in payment of attorney's fees; $800 per month was to be paid to Millicent for the support of plaintiff, thereafter plaintiff's two sisters should each receive $2,500 from his earnings and after the enumerated sums had been paid all of plaintiff's net earnings, as defined in the stipulation, should be divided 10 percent to Cecil, 5 percent to Eileen, 5 percent to Hilda, and the balance to plaintiff. The stipulations were made subject to approval by the court and provided that when so approved they should constitute "a binding contract and agreement between all the parties hereto . . . all subject, however, to the further order of the court." The stipulations were approved by the court, the guardian's account was approved, and it was ordered that the guardian should disburse the earnings of plaintiff in accordance with the terms of the stipulations. The appeal was dismissed as agreed. From June, 1936, to January, 1938, payments were made from

plaintiff's estate and earnings in conformity with the stipulations. In the meantime, by order of court dated April 3, 1937, and with the consent of Cecil and Lilian, Millicent had duly adopted plaintiff. The corporate guardian resigned as guardian of the estate, its account was duly filed and approved by the court, and Cecil and Millicent each filed a petition for appointment of a guardian of the estate, Cecil petitioning for the appointment of another corporate guardian and Millicent for her own appointment; Cecil filed written objections to the appointment of Millicent, and following a trial the petition of Cecil was denied and that of Millicent was granted and letters of guardianship were duly issued to her.

In January, 1938, Millicent filed a petition showing a depletion of plaintiff's estate and earnings by reason of the payment of taxes, attorneys' fees, payments to Cecil, Eileen and Hilda and miscellaneous expenses, alleging her adoption of plaintiff, and seeking a modification of the former orders respecting payments to Cecil, Eileen and Hilda so as to relieve plaintiff and his estate from any and all obligations to make further payments to them under the compromise agreement of 20 percent of said earnings or any sum whatsoever. Objections were made by Cecil and after a trial of the issues raised by the petition and objections the court on February 24, 1938, revoked and abrogated all previous orders which required payments to be made to Cecil, Eileen or Hilda and directed the guardian to make no further payments from plaintiff's estate or earnings to any of them. Since the date of said order no such payments have been made.

On August 19, 1938, Lilian was appointed guardian *ad litem* of Eileen and Hilda and as such moved the court to vacate the order of February 24, 1938, discontinuing payments to the minors under the compromise agreement; Cecil made a similar motion. These motions were denied October 19, 1938. Appeals by Cecil and Lilian as guardian *ad litem* from the last mentioned order were later abandoned. Notwithstanding said orders, Lilian as such guardian *ad litem* filed on July 17, 1939, a petition seeking an order requiring the guardian to pay to Hilda and Eileen sums which it was alleged had fallen due to them pursuant to the compromise agreement. This petition was denied.

On September 27, 1937, Cecil and Lilian made application for revocation of the order of adoption, their application

was denied and they appealed. The order was affirmed November 21, 1938 (*In re Bartholomew*, 29 Cal.App.2d 343 [84 P.2d 199]).

The foregoing is a summary of the proceedings which for the most part preceded the institution of the three actions prosecution of which was enjoined by the judgment under review. We now refer to the complaints in those actions and to the issues tendered thereby.

(A) On June 9, 1938, Cecil and Lilian filed suit No. 429060 against Millicent, the corporation which had acted for a time as guardian of plaintiff's estate, against attorneys who had formerly represented Cecil and Lilian or either of them, and against attorneys who had formerly represented Millicent, and by their complaint in that action alleged that "between the 10th day of June, 1936, and the first day of October, 1937, in the City of Los Angeles, County of Los Angeles, State of California, the defendants and each of them received from divers persons the sum of Forty Thousand Dollars ($40,000) to and for the use of the plaintiffs." The complaint was filed in propria persona; in July, 1939, Mitchel S. Meyberg became counsel for plaintiffs in that action.

(B) On June 19, 1939, Cecil and Lilian instituted action No. 442074 against Millicent individually and also as such guardian and against certain of the attorneys who had theretofore represented them, seeking damages in the sum of $1,000,000. The complaint alleged that the defendants in said action had conspired to defraud the parents into executing the agreement of compromise of the controversy over the appointment of Millicent as guardian and into consenting to the adoption of Frederick by said Millicent. It was alleged that in connection with said adoption said Millicent had executed a writing and delivered the same to Cecil, by the terms of which she agreed to revoke and cancel the order of adoption at any time within six months after the entry thereof if Cecil and Lilian so requested; that said plaintiffs were induced by false representations and promises of certain of the defendants in said action to consent to the retention of said Millicent as guardian and that they were induced by certain representations and promises of Millicent to give written consent to the adoption of their son. This complaint was filed in propria persona and about a year after its filing Mitchel S. Meyberg became counsel for plaintiffs in said action.

(C) On June 22, 1939, Leonard J. Meyberg instituted action No. 442224 against plaintiff herein and Millicent individually and as his guardian and against Cecil, Lilian and others, alleging that he had obtained judgment against Cecil and Lilian on or about November 24, 1937, for the sum of $7,739.99, for legal services rendered, which remained wholly unpaid; that execution had been issued and returned unsatisfied; that the defendants therein entered into the compromise agreement and stipulations (those of June 10 and 24 and September 10, 1936, hereinbefore referred to) and thereby transferred all of the property of said Cecil and Lilian to the plaintiff herein (consisting of their rights to plaintiff's earnings) and that said transfer was made without consideration and for the fraudulent purpose of preventing the collection of said judgment; that said transfers left Cecil and Lilian insolvent and that the earnings of the plaintiff herein so transferred to him had amounted to more than $100,000, all of which it was alleged belonged to defendants Cecil and Lilian as the natural parents of plaintiff. It was sought to have said compromise agreement declared void. By amendment of the complaint certain attorneys who had formerly represented Cecil in the foregoing proceedings were brought in as defendants.

The causes of action of the pending suits (A) and (B) of Cecil and Lilian are founded primarily upon the claim that they have been wrongfully deprived of their rights as the natural parents of plaintiff to his custody, services and earnings. Action (C) of defendant Leonard J. Meyberg proceeds upon the theory that had it not been for the agreement, all of plaintiff's earnings would have belonged to his natural parents.

Since the three actions against which the injunction was granted were instituted prior to the issuance of the injunction, the present case is governed by the principles stated in certain of our code sections. By section 526, subdivision 6, of the Code of Civil Procedure it is provided that an injunction may be granted ''Where the restraint is necessary to prevent a multiplicity of judicial proceedings.'' The same section also provides as follows: ''An injunction cannot be granted: 1. To stay a judicial proceeding pending at the commencement of the action in which the injunction is demanded, unless such restraint is necessary to prevent a multiplicity of such proceedings.'' The latter provision is also

found in section 3423, subdivision first, of the Civil Code. With these sections should be read section 3274 of the Civil Code, which provides: "As a general rule, compensation is a relief or remedy provided by the law of this state for the violation of private rights, and the means of securing their observance; and specific and preventive relief may be given in no other cases than those specified in this part of the Civil Code."

The judgment in the present action depends wholly upon the sufficiency of the proof to establish that an injunction was necessary in order to prevent a multiplicity of judicial proceedings.

There are two theories advanced by plaintiffs in support of the judgment, each of which is relied upon independently of the other. One theory is that defendants have banded together for the purpose of bringing many suits against Frederick and Millicent, with the evil motive of causing them such great expense and embarrassment and causing plaintiff Frederick such harmful publicity as to force them to make settlement of the claims of defendants in order to avoid great expense of litigation and great injury to Frederick's reputation and popularity as a motion picture actor. A second theory is that the issues made in the three pending suits have been determined in favor of plaintiffs herein in the course of previous litigation between plaintiff and his guardian on the one side and Cecil and Lilian upon the other, and that the repeated attempts to relitigate those issues were properly enjoined.

As we understand plaintiffs' first stated theory, it is that an injunction was properly issued against the further prosecution of the three pending cases and the institution of similar cases if the proof was sufficient to show that defendants have conspired together to bring suits upon groundless and fictitious claims. It is contended that a court of equity in such a case may enjoin the trial of any such actions if they are found to be groundless, even though the issues have not been previously determined and without a trial of those issues in the equitable action, and they say, "an injunction will be granted to prevent the commencement and prosecution of groundless suits brought to vex and harass; and that the court's power is not and could not be limited to instances where the groundless nature of the suits had been previously

adjudicated.'' And again, "it is not essential to the granting of a bill *quia timet* that all issues raised be theretofore adjudicated adversely and that all that need be shown is that the actions are groundless and brought for the purpose of harassing and vexing the defendants by ceaseless and expensive litigation.'' Plaintiffs place much reliance upon these propositions. These contentions find no support in the allegations of the complaint, in the findings or in the law governing the case before us.

It was not alleged in the complaint and the court made no finding to the effect that the claims asserted by defendants were *intrinsically fictitious* or *unfounded*. The allegations of the complaint in this connection which were found to be true were to the effect that there had been prior adjudications of the issues in the pending suits and that for that reason plaintiffs herein had good and meritorious defenses. There was, as we have stated, a finding to the effect that the purpose of the defendants is to bring many and successive actions against plaintiffs upon claims *which have already been adjudicated,* for the purpose of forcing settlements in order to avoid the expense of litigation and injury to Frederick's business career. If that were true, plaintiffs would be entitled to proper relief in equity against harassment by a multitude of suits.

■ The right to enjoin the prosecution of several actions which have not been tried does not depend solely upon the merits of the cases to be enjoined. The court does not scan pending cases and enjoin their prosecution because it may appear that they are without merit or that the probability of recovery therein is remote. The procedure is not to dispense with a trial altogether but to dispense with cumbersome, expensive and time-wasting procedure. A man with a poor case is as much entitled to have it judicially determined by usual legal processes as the man with a good case. Where there has been no adjudication and resort is had to equity, the question is whether numerous pending actions should be tried together in a consolidated action or whether they should be allowed to go to trial separately. Powers of a court of equity are not extended to the length of enjoining any trial at all. Mr. Pomeroy says in his Equity Jurisprudence, 5th ed., vol. 1, p. 467, § 245: "It should be observed in this connection that the prevention of a multiplicity of suits as a ground for the equity jurisdiction does not mean the com-

plete and absolute interdiction or prevention of any litigation concerning the matters in dispute, but the substitution of one equitable suit in place of the other kinds of judicial proceeding, by means of which the entire controversy may be finally decided.'' The same principle is stated at page 506, section 254. (See, also, 32 C.J., p. 101, § 99.) If it be granted that within the limitations of the code sections which we have cited there could be cases of such a preposterous nature and prosecuted with such evil intentions as to justify their being seized upon and throttled without trial, the efforts of a mother and father to preserve their rights of parenthood, however persistent, cannot be so classified or dealt with. If, therefore, the issues in the pending suits have not been already determined in favor of plantiffs here, they should be tried, either separately or together.

There are two general classes of cases in which injunctions are issued to prevent a multiplicity of actions, namely, those in which many claims which have not been adjudicated are brought into equity to be made the subject of a single trial and decree, as was done in *Southern Pacific Co.* v. *Robinson,* (1901) 132 Cal. 408 [64 P. 572, 12 L.R.A. N.S. 497], and *Atchison etc. Ry. Co.* v. *Smith,* (1919) 42 Cal.App. 555 [183 P. 824], and those that are enjoined because they are shown to be vexatious suits upon causes of action that have been settled by former adjudication. Many cases of the latter class are cited by Mr. Pomeroy in the passages hereinafter referred to. The principle is not questioned by defendants. The judgment here cannot stand if the case does not belong in one or the other of these classes. The case as it is presented by the record is not of the first class, being excluded therefrom by the nature of the relief applied for and which was granted.

We shall now inquire whether it belongs in the second class of cases, which involves the question of res judicata. The controlling question is whether the matters presently in issue have been adjudicated between the parties, or some of them. We think they have not been and for the following reasons:

The court found that all of the issues of law and fact had been previously adjudicated in favor of plaintiffs in eighteen separate proceedings. Counsel for plaintiffs, who were not counsel at the trial, do not attempt to explain or to justify

these broad findings. Undoubtedly they realize that such an effort would be unavailing. They content themselves with the following statements: "Almost every claim appellants seek to make, of a nature affected by the injunction, is blocked by one or another of the probate orders or by the adoption order. The remainder of the rights claimed are of a purely fanciful nature or are such that if once existent have been eliminated by the actions of the parties." And further, "The court properly enjoined further attacks upon the probate and adoption orders as they are final and only subject to attack for extrinsic fraud. No extrinsic fraud is pleaded by appellants." The orders and judgments upon which the findings of res judicata are based are the following:

(1) Seven orders settling accounts rendered by Millicent or Union Bank & Trust Company of Los Angeles as guardian of the estate of the minor;

(2) An order of October 29, 1936, finally discharging Millicent as guardian of the estate;

(3) Judgments of dismissal of actions No. 401182 and 401214, in which actions an accounting was sought by Cecil and Lilian of Frederick's earnings received by Millicent. These actions were dismissed for want of prosecution;

(4) The order of April 22, 1936, denying the petition of Cecil and Lilian to vacate the order appointing Millicent guardian of the person and estate of Frederick;

(5) The order for the adoption of Frederick by Millicent, dated April 3, 1937;

(6) The order of November 1, 1937, denying the petition of Cecil and Lilian to vacate the order of adoption;

(7) The judgment of the District Court of Appeal, 29 Cal.App.2d 343 [84 P.2d 199], affirming the order denying the petition to vacate the order of adoption;

(8) The order of February 24, 1938, discontinuing payments to Cecil, Eileen and Hilda under the compromise agreement;

(9) The order of October 18, 1938, denying motions of Cecil and Lilian for orders vacating the order of February 24, 1938, last above described.

The orders (No. 1) did not determine all or any of the issues of the three pending suits. The accountings were

between the guardian and the ward. The adverse claims of the parents were in no way involved.

The order (No. 2) discharging Millicent as guardian of the estate at the time of the appointment of Union Bank & Trust Company was not an adjudication of any issue in the three pending suits.

The judgments of dismissal (No. 3) of the two actions for accounting were not upon the merits, being judgments of dismissal for want of prosecution, and purported to adjudicate no question as to the right of the parents to the earnings of Frederick. (*McDonald* v. *Smoke Creek Live Stock Co.*, (1930) 209 Cal. 231, 238 [286 P. 693] ; *Goddard* v. *Security Title Ins. & Guar. Co.*, (1939) 14 Cal.2d 47, 52 [92 P.2d 804], and cases there cited.) However, it may be that the dismissals operate as a bar to any claim of Cecil or Lilian to any more of the earnings of Frederick than they have already received, for reasons which we will state hereafter.

The order (No. 4) denying the petition to vacate the order appointing Millicent guardian of the person and estate of the minor is conclusive only as to the regularity of her appointment and of her right and authority to act as such guardian.

The order (No. 5) of adoption of Frederick by Millicent, the order (No. 6) refusing to vacate the order (No. 5) and the affirmance of order (No. 6) by decision of the District Court of Appeal (No. 7) constitute a final adjudication binding upon everyone as to the regularity and effectiveness of the order of adoption. In this connection we should state that the very facts alleged in case (B) as to alleged false representations made by Millicent to the parents and which it is claimed induced them to give their consent to the adoption are the facts which were presented to the superior court on the application to vacate the order of adoption and which are stated in the opinion of the District Court of Appeal (29 Cal.App.2d 343) [84 P.2d 199]. ■ The order of adoption was attacked in the former proceeding upon the ground of extrinsic fraud and that issue was decided in favor of Millicent. Although the ruling was made on a motion to vacate the order, the affirmance on appeal of the order denying the motion is a bar as between Millicent and Frederick on the one side and Cecil and Lilian on the other to any further attack upon the or-

der of adoption upon the ground of extrinsic fraud. (*Lake* v. *Bonynge*, (1911) 161 Cal. 120 [118 P. 535].) However, those were not all of the facts alleged in the complaint in case (B).

The order (No. 8) terminating payments under the compromise agreement and order (No. 9) denying the petition for an order for a continuance of such payments to Hilda and Eileen are final, but they decided nothing with which we are concerned on the present appeal. (There is a fourth action pending, brought by Lilian as guardian *ad litem* of Hilda and Eileen against Union Bank & Trust Company of Los Angeles, et al., prosecution of which was sought to be enjoined. No service was made upon the minors or their guardian and prosecution of their action is not restrained by the judgment.)

Some clarification of the situation may here be attempted. Cecil and Lilian have accepted payments under the compromise agreement and Cecil sought to prevent their discontinuance. Cecil and Lilian do not appear to have rescinded or attempted to rescind the agreement. In their action (B) for damages they sued for detriment alleged to have been suffered by reason of fraud inducing them to make the compromise agreement, under which they claim to have lost the right to the custody of their son and to all of his earnings except those payable to them under the agreement. It may well be contended that in suing for damages resulting from their agreement they have affirmed it, and that they have affirmed it by their endeavors in the guardianship proceedings to enforce it. Nevertheless, in action (A) Cecil and Lilian sue divers persons for an accounting of earnings of Frederick between the 10th day of June, 1936, and the 1st day of October, 1937, during all of which time the compromise agreement was in force. Of this claim counsel for Cecil and Lilian in their brief say, ''It is based upon the fact that the Aunt Millicent collected the earnings of her nephew amounting to about $40,000 for nearly two years, when no guardian existed. By virtue of C. C. 197, this money was the property of the parents. The compromise agreement of June 24, 1936, was entered into whereby the parents surrendered this $40,000 to Millicent who divided it between herself and certain attorneys who fraudulently assisted her to retain the minor. Later Millicent repudiated this compromise contract and

refused to perform thereunder. So the parents sued Millicent, together with the other persons who improperly took their money.'' Reading the complaint with the above statement from defendants' brief, we find that this suit was for the recovery of certain of Frederick's earnings received before and some received after Millicent's appointment as guardian and prior to the 1st day of October, 1937. Included with Millicent, individually, as defendants in that action were all of the attorneys who had previously acted for Millicent or Cecil or Lilian. So far as the defendants other than Millicent are concerned, it is said by counsel for Cecil and Lilian that recovery is sought against such other defendants of moneys which they received for attorneys' fees under the compromise agreement. There appears to be a conspicuous inconsistency in their positions in the two cases. If Cecil and Lilian surrendered their rights to Frederick's earnings, other than as they were preserved to them by the compromise agreement, which they allege to be the case in action (B), they have no right to receive any greater share of his earnings. It is asserted in the briefs and not disputed that Cecil and the daughters received their shares of the earnings even after Frederick was adopted by Millicent and until the order of February 24, 1938, terminated such payments. Certain other facts are worthy of note in this connection. By the compromise agreement a petition to terminate the guardianship was to be and was dismissed, Millicent was to remain and did remain as guardian of Frederick's person, Union Bank & Trust Company of Los Angeles was to be appointed and was appointed as guardian of the estate, and Millicent's account filed May 2, 1936, was to be and was approved by the court as rendered. In that account Millicent accounted for all of the earnings of Frederick from September 18, 1934, when Frederick first derived income from his services for a motion picture studio in California. In the objections to the account one of the grounds stated was that the account included sums which came to Millicent from Frederick's earnings prior to the guardianship. It was contended that such earnings were no part of the guardianship estate. It would appear therefore that when they agreed to the approval of the guardian's account in which she returned these earnings as a part of the estate of the minor, Cecil and Lilian purported, in consideration of advantages inuring to them, to relinquish all

claim which they then had upon such earnings adverse to Frederick and Millicent as his guardian.

From the foregoing it appears that there has been no judicial determination as to whether the compromise agreement is valid and binding upon Cecil and Lilian, although that question, as we have pointed out, will be involved in the decision of case (A). Obviously the court may find it important, in determining in that case where Frederick's earnings therein claimed are to go, to decide whether the compromise agreement is valid and effective and to consider the effect of its terms upon the disposition of Frederick's earnings. Any steps Cecil and Lilian may have taken toward a ratification of the agreement would be but matters of evidence in a trial. It should not be assumed, as appears to have been done, in judging of the merits of case (A) and in enjoining its further prosecution, that they are bound by the contract, when that question has not been judicially determined. It has never been determined because it has never been put in issue. In deciding other questions relating to the settlement agreement in the trial of case (A) the court would have occasion to consider whether there had been a retraxit, arising from the terms of the agreement, the failure to prosecute actions of Cecil and Lilian for an accounting (Nos. 401182 and 401214 hereinbefore mentioned) and their subsequent dismissal. A dismissal which is intended as a retraxit is a bar to another action involving the cause of action which has been withdrawn. (*Crossman* v. *Davis*, (1889) 79 Cal. 603 [21 P. 963]; *Lamb* v. *Herndon*, (1929) 97 Cal.App. 193 [275 P. 503].) For like reasons the trial of action (A) should not be enjoined upon the theory, also advanced by plaintiffs, that Millicent, as guardian, had the exclusive right to receive Frederick's earnings in question and that the court would probably so hold upon a trial of action (A).

Action (B) for damages, as we have stated, involves charges of fraud with relation to the settlement agreement and also with relation to the adoption proceedings. Defendants contend that these issues have not been tried. The issue based upon alleged fraud in the adoption proceedings has been tried; the one based upon allegations of fraud inducing the making of the settlement has not been adjudicated.

Plaintiffs' position, as we understand it, is that it was proper to enjoin the trial of this action because Cecil and

Lilian have lost all right to the earnings of Frederick by reason of his "emancipation," consisting of their surrender of his custody and of their right to his earnings. In other words, it is not contended that their claims of fraud have been decided adversely to them but that they could not have been damaged by reason of the facts which they allege in their complaint. This contention requires no extended discussion. It cannot be questioned that if the settlement agreement was entered into voluntarily by Cecil and Lilian and was in all respects valid, as plaintiffs here contend it was, the parents waived all of their rights except those saved to them by the terms of the agreement, and it may be conceded, as plaintiffs contend, that the parents have received everything due to them by the terms of the agreement. But unless the parents had, independently of the agreement, lost their rights to the custody of their son and to his earnings (a question that has not been judicially determined), and if their consent to the agreement was obtained through fraud as they allege, they are entitled to have a trial of their alleged cause of action for damages. If their rights to Frederick's earnings and custody have been cut off by the agreement and if they have a cause of action for fraud, that cause of action theoretically takes the place of their claim upon the earnings and persists notwithstanding the agreement. If the orders of court approving the compromise agreement should be regarded, as plaintiffs contend, to be judgments establishing the validity of the agreement, that fact would not militate against the claim that the agreement was obtained through extrinsic fraud. The orders were made upon stipulation of the parties to the agreement. No dispute was presented to the court for decision and none was decided. If the agreement had been adjudged to be binding upon Cecil and Lilian, which fact, while admitted in case (B), is yet involved in case (A), the parties to action (B) would stand only upon the threshold of the trial of that action.

We make no attempt to enumerate all of the issues that may have to be tried, those that may be tendered by the defendants as well as those tendered by the plaintiffs in these two cases, when the pleadings are finally settled, nor to do more than point out that there are issues raised in the pending cases that have not been tried. We deem it unnecessary to go further into the issues of these two cases in sup-

port of our conclusion that they are not res judicata and that therefore the court was in error in enjoining their further prosecution.

■ As to action (C) our conclusion is the same. The claim advanced there is that the settlement agreement was made with the fraudulent purpose of defeating collection of the Meyberg judgment. Plaintiffs herein do not contend that there has been an adjudication against the contention of the plaintiff in the Meyberg suit. They contend that the further prosecution of that action was properly enjoined because, as they claim, it has been adjudged that the parents have no right to the earnings and also because a creditor of a parent has no right to set aside a transfer or surrender by the parent of his rights in and to the earnings of a minor child, even though such transfer or relinquishment may leave the parent insolvent and unable to pay the judgment. Upon these grounds alone they seek to justify the injunction. This is only to say that the court should enjoin the trial of that action if it appears that the plaintiff therein cannot prevail, not because the issues in the case have been adjudicated but because he has a poor case. We have already undertaken to show that this position is unsound. If the plaintiff in that action has failed or is unable to state a cause of action, the court should have sustained a demurrer to his complaint and decided the case in favor of the defendants therein on questions of law. There is no contention that the case has been disposed of in that manner and since if there had been such a ruling prior to the trial of the instant case the record no doubt would so show, we must assume that no such ruling has been made.

The inconsistency in the positions of Cecil and Lilian, who are now represented by M. S. Meyberg (Leonard J. Meyberg joining with him in the brief), in contending that the settlement agreement accomplished a fraud upon them, and the contention of Leonard J. Meyberg, their former attorney, that it was entered into by his clients for the purpose of defrauding him are obvious but they do not detract from the rights of the respective plaintiffs in those cases to carry them through the courts.

The judgment should be reversed as to all appellants. If the case were a proper one for an injunction against the separate trial of the pending actions in order that they might be tried in this case, further proceedings under appropriate

pleadings might be called for, but we think it is not such a case.

The code provisions which govern the issuance of injunctions to prevent a multiplicity of suits state the law with sufficient explication to point the way to the proper procedure for a disposition of the pending litigation. Injunctions may issue only when "necessary" to prevent a multiplicity of actions. The principle is stated more fully in Pomeroy's Equity Jurisprudence, 5th edition, volume 1, page 506, section 254, as follows: "It should also be observed that if the pending actions at law are of such a nature or for such a purpose, that, according to the settled rules of the legal procedure, they may all be consolidated into one, and all tried together by an order of the court in which they or some of them are pending, then a court of equity will not interfere; since the legal remedy of the plaintiff is complete, certain, and adequate, there is no necessity for his invoking the aid of the equitable jurisdiction." (See, also, p. 495, § 251¾.) Many cases are cited supporting the above text, but the principles which they declare do not differ from our own code provisions.

The limitation upon the right to enjoin to cases where the exercise of that power is "necessary" is to be understood as forbidding the use of injunctive measures in all cases where the end which could be reached through the medium of an injunction can be reached with the same effect through other forms of procedure. There is no difference in the end to be reached, namely, the saving of expense, time and inconvenience, between a consolidation of cases for trial in a single equitable action by means of injunction and their trial in a consolidated action or in a single department of the court, where that is feasible, by simple order of court, as in the present situation. Section 1048 of the Code of Civil Procedure grants the court broad powers to order actions consolidated. So far as the pending actions are concerned, they called for nothing more than an order that they be tried together or perhaps consolidated. We think this would have been a simple and adequate procedure and one fully warranted by the nature of the issues to be tried, in order to avoid the possibility of conflicting findings and judgments. If they should be tried without a jury the procedure will be simple. If a jury should be demanded to try some of the

issues or all of the issues in a single case, that would present no obstacle to the complete determination of all of the cases in a single department of the court and in an orderly manner. ■ The right of trial by jury should not be taken away by the interposition of equitable jurisdiction when it can as well be preserved. ■ But questions as to the best procedure to be followed in order to accomplish one complete end of the litigation should be left to the discretion of the trial court. The case is simply not one where the use of the extraordinary power to enjoin is "necessary" in order to prevent a multiplicity of suits, insofar as the pending actions are concerned.

Since it is clear that the use of the power to enjoin is not necessary in order to prevent a multiplicity of suits, within the meaning of the code sections and rules which we have stated, there is no occasion to determine whether injunctive relief should be denied upon other grounds. For that reason we forbear to enter upon an analysis of the causes of action in the pending suits and the respects in which each differs from the others and might therefore require entirely different proof and to determine whether an injunction would be improper for reasons stated in *Noroian* v. *Bennett*, (1919) 179 Cal. 806 [179 P. 508].

So far as any threatened suits are concerned, plaintiffs' right to enjoin the institution of any such suits falls with their right to enjoin prosecution of the pending actions. Needless to say, alleged threats of defendants herein (as to which there is no proof) to institute other actions do not of themselves and in the absence of other grounds for relief, present a case for injunctive relief where the demands to be made in such threatened actions have not been previously adjudicated between the parties. If, as would appear to be the case, there have been repetitious applications made by some of the defendants in the guardianship proceeding, that is a matter entirely within the control of the court in which those proceedings are pending and presents no such unusual conduct upon the part of unsuccessful litigants as to call for the interposition of equity.

The evidence in the case consisted of the records of the court which establish the matters to which we have referred throughout the opinion. We have pointed out the insufficiency of the evidence to sustain the findings upon the issue of

res judicata. In the absence of such findings and evidence to support them, the judgment is without foundation.

The judgment is reversed.

Schauer, P. J., and Shaw, J. pro tem., concurred.

A petition for a rehearing was denied January 18, 1943, and respondents' petition for a hearing by the Supreme Court was denied February 15, 1943. Schauer, J., did not participate therein.